**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | | |
|---|---|---|
| FAITH MCLAIN, CHRISTEEN MCLAIN, JOHN MCLAIN, MOLLY MCLAIN, MIRA MCLAIN, AND MATTHEW MCLAIN, AS BENEFICIARIES OF THE ESTATE OF BERNARD MCLAIN, AND MARY MCLAIN, INDIVIDUALLY AS BENEFICIARY OF THE ESTATE OF BERNARD MCLAIN AND AS TRUSTEE OF THE E-3 RANCH TRUST, | ) ) ) ) ) ) ) ) ) ) ) ) | CV-16-36-BLG-SPW-CSO |
| Plaintiffs, | ) ) ) | **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| vs. | ) ) | |
| FRANCIS MCLAIN, INDIVIDUALLY AND AS CO-MANAGER OF TERA BANI RETREAT MINISTRIES, CAROLINE MCLAIN, INDIVIDUALLY AND AS MANAGING DIRECTOR OF TERA BANI RETREAT MINISTRIES, ALAKHI JOY MCLAIN, SOHNJA MAY MCLAIN, AND DANE SEHAJ MCLAIN, AS PURPORTED CERTIFICATE HOLDERS OF THE E-3 RANCH TRUST, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

1

THE UNITED STATES OF
AMERICA,

    Intervenor Defendant and
    Counter/Cross-Claimant,

vs.

FAITH MCLAIN, CHRISTEEN
MCLAIN, JOHN MCLAIN, MOLLY
MCLAIN, MIRA MCLAIN, AND
MATTHEW MCLAIN, as
Beneficiaries of THE ESTATE OF
BERNARD MCLAIN; and MARY
MCLAIN, as Beneficiary of the
ESTATE OF BERNARD MCLAIN,
and as Trustee of the E-3 RANCH
TRUST,

    Counterclaim Defendants,

    and

FRANCIS MCLAIN, individually, and
as Co-Manager of TERA BANI
RETREAT MINISTRIES; CAROLINE
MCLAIN, individually, and as
Managing Director of TERA BANI
RETREAT MINISTRIES; and
ALAKHI JOY MCLAIN, SOHNJA
MAY MCLAIN, AND DANE SEHAJ
MCLAIN, as Beneficiaries of the E-3
RANCH TRUST,

    Crossclaim Defendants,

    and

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

AMERICAN BANK OF MONTANA )
and BRAD D. HALL, )
)
     Additional Defendants on )
     United States' Claims )
)

## I.   Introduction

This case, although involving other matters, principally concerns

ownership of a ranch located in the Paradise Valley roughly 15 miles

south of Livingston, Montana. The action pits two factions of a family

against one another, and also involves the United States, as an

intervenor, attempting to assert a claim over any right one family

member may have in the ranch.

On April 8, 2016, the United States timely removed the case

under 26 U.S.C. § 7424, 28 U.S.C. § 2410, 28 U.S.C. § 1444, and 28

U.S.C. § 1441. *Notice of Removal (ECF No. 1) at 2-3.*[1] Now pending are

(1) the family factions' cross motions for summary judgment concerning

whether one family member owns the ranch through adverse

---

[1]"ECF No." refers to the document as numbered in the Court's
Electronic Case Files. *See The Bluebook, A Uniform System of Citation,
§ 10.8.3.* Citations to page numbers refer to those assigned by the
electronic filing system.

possession, *Defts' Mtn. (ECF No. 23) and Pltfs' Mtn. (ECF No. 30)*; (2) the Defendant family faction's concurrently-filed Rule 12(b)(6)[2] motion to dismiss the United States' Intervenor Complaint, *Defts' Mtn. (ECF No. 23)*; and (3) the Plaintiff family faction's summary judgment motion concerning the validity of a trust at issue and, alternatively, the transfer of the ranch to one of the family members, *Pltfs' Summary Judgment Mtn. (ECF No. 36)*.[3]

## II.    The Parties and Their Claims

Plaintiffs are Faith McLain ("Faith"), Christeen McLain ("Christeen"), John McLain ("John"), Molly McLain ("Molly"), Mira McLain ("Mira"), and Matthew McLain ("Matthew"), as beneficiaries of the Estate of Bernard McLain ("Bernard's Estate"), and Mary McLain ("Mary"), as a beneficiary of Bernard's Estate and as Trustee of the E-3 Ranch Trust (collectively the "McLain Plaintiffs").  Faith, Christeen,

---

[2]References to rules are to the Federal Rules of Civil Procedure unless otherwise noted.

[3]The undersigned reserves any recommendation on the summary judgment motion (*ECF No. 36*) concerning the validity of the E-3 Ranch Trust and, alternatively, the transfer of the ranch to one of the family members pending the District Court's final rulings on the other pending motions.

John, and Mary are siblings and the children of Bernard and Kathryn McLain, who are now deceased. Molly, Mira, and Matthew are the children of James McLain, also known as Harley McLain ("Harley"), who is deceased and who also was one of Bernard and Kathryn McLain's children.

Defendants are Francis McLain, also known as Frank McLain ("Frank"), Caroline McLain ("Caroline"), Alakhi Joy McLain ("Alakhi"), Sohnja May McLain ("Sohnja"), and Dane Sehaj McLain ("Dane") (collectively the "McLain Defendants"). Frank, named as a presumed beneficiary of Bernard's Estate and the Co-Manager of Tera Bani Retreat Ministries, also is one of Bernard and Kathryn McLain's children, and is a sibling of Faith, Christeen, John, Mary, and Harley. Caroline is Frank's wife and the Managing Director of Tera Bani Retreat Ministries. Alakhi, Sohnja, and Dane are Frank and Caroline's children, and are named as purported certificate holders of the E-3 Ranch Trust.

On July 8, 2014, the McLain Plaintiffs initiated this action in Montana state court. *ECF No. 4.* On August 15, 2014, they filed their

First Amended Complaint for Declaratory Judgment. *ECF No. 5.* They seek a declaration that: (1) the E-3 Ranch Trust, into which the ranch was purportedly placed, is invalid; (2) certain title transfers involving the ranch are invalid; and (3) the ranch, with certain exceptions, is an asset of Bernard's Estate, which is currently involved in a separate probate action in state court. *Id. at 13-14.* Alternatively, the McLain Plaintiffs seek a declaration that: (1) the E-3 Ranch Trust is valid; (2) certain title transfers involving the ranch are invalid; and (3) the ranch, with certain exceptions, is an asset of the E-3 Ranch Trust, and thus must be distributed accordingly in the formal probate of Bernard's Estate. *Id. at 14.*

On April 8, 2016, the United States removed the matter to this Court after first receiving the state court's leave to intervene. *ECF No. 1.* In its Intervenor Complaint, the United States claims, *inter alia*, that: (1) Frank was convicted of nine counts under 26 U.S.C. § 7202 "for his willful failure to account for and pay over the employment taxes of Kirpal Nurses, LLC [("Kirpal")], and he was sentenced to 48 months imprisonment by the United States District Court for the District of

Minnesota on September 11, 2009[,]" *Intervenor Cmplt. (ECF No. 20) at ¶ 13*; (2) in May 2014 a delegate of the Secretary of the Treasury made timely Trust Fund Recovery Penalty ("TFRP") assessments of liability arising under 26 U.S.C. § 6672 against Frank for his willful failure to collect, truthfully account for, and pay over the employment taxes of Kirpal, an entity that Frank owned, controlled, and managed, totaling $492,451.38, *id. at ¶ 12*; (3) Frank has neglected or refused to fully pay the assessed amounts, allowing interest, penalties, and statutory additions to accrue, *id. at ¶¶ 15 and 16*; (4) tax liens arose in favor of the United States on the assessment dates and attached to all of Frank's property and rights to property, including the ranch at issue in this action, *id. at ¶ 17*; (5) in addition to Frank, the United States names as crossclaim defendants Caroline, Alakhi, Sohnja, and Dane because each may claim an interest in the ranch, *id. at ¶¶ 6-9*; (6) the United States names as counterclaim defendants Faith, Christeen, John, Molly, Mira, Matthew, and Mary because each may claim an interest in the ranch, *id. at ¶ 5*; and (7) the United States names American Bank of Montana and Brad D. Hall as additional defendants

7

on its claims because each may claim an interest in the ranch, *id. at ¶¶ 10-11*.

For its claims, the United States seeks: (1) the Court's judgment finding that Caroline holds title to the ranch as Frank's nominee or transferee and setting aside fraudulent transfers of the ranch, which would allow the United States' tax liens against Frank to attach to the ranch, *id. at ¶¶ 40-60*; (2) foreclosure of its federal tax liens on the ranch currently held by Caroline to allow the United States to receive the proceeds from the sale of the ranch and to apply them toward satisfaction of the outstanding federal tax assessments against Frank, *id. at ¶¶ 61-66*; and (3) alternatively, foreclosure on Frank's interest in Bernard's Estate, *id. at ¶¶ 67-72*.

## III.  **Background**[4]

On or about June 21, 1996, a Limited Warranty Deed was executed transferring title to the following described real property, commonly referred to as the E-3 Ranch, from the Dorothy H. Malcolm

---

[4]The background facts are from the parties' submissions.  Unless otherwise noted, the parties do not dispute them.

Revocable Living Successor Trust to Frank and an individual named

Brad D. Hall ("Hall"):

**TOWNSHIP 4 SOUTH, RANGE 9 EAST, PMM**
**PARK COUNTY MONTANA**

Section 26: SW1/4, and portion of the SQ1/4WE1/4 lying
South and West of what is known as the Mountain Road,
EXCEPTING THEREFROM, two acres for a Cemetary as
reserved in that Quit Claim Deed recorded October 22, 1904
in Volume 26, Page 264.

Section 35: All, lying North of Shorthill Creek (Reference
Deed recorded in Volume 113, Page 323).

Approximately 20 acres of the E-3 Ranch ("Hall Parcel") were

transferred to Hall by Special Warranty Deed on October 30, 2002.[5]

On or about November 30, 1996, Bernard and Kathryn McLain

effectively loaned one of Frank's companies approximately $290,000.00

("Loan") via credit cards, cash advances, and/or payment of expenses.

Frank and Caroline personally entered into the note. The Loan was

---

[5]The McLain Plaintiffs note that: "The United States takes issue
with the transfer to Brad Hall. The McLain Plaintiffs do not dispute
that ten (10) acres of property were transferred to Brad Hall in
exchange for his agreement to initially co-sign the mortgage with
American Bank. The McLain Plaintiffs dispute that he ever had any
title to any of the E-3 Ranch beyond the agreed upon ten (10) acres."
*ECF No. 31 at 10, n.5.* And, they acknowledge that this factual dispute
is not relevant to the motions now before the Court. *Id.*

secured by a Mortgage and Security Agreement and Fixture Financing Agreement ("McLain Mortgage") encumbering the E-3 Ranch dated November 30, 1996, and recorded with the Park County Clerk and Recorder on April 7, 2000 at Book 147, Page 720.

On February 16, 1998, a Contract and Declaration for an "Irrevocable Pure Trust Organization" commonly referred to as the E-3 Ranch Trust ("E-3 Ranch Trust") was purportedly created at Frank's request. The McLain Plaintiffs maintain as follows: "Richard Humpal, Mary, and Harley were named as Trustees of the E-3 Ranch Trust. Richard Humpal and Harley are now deceased and successor trustees have not been appointed to fill their vacancies." The McLain Defendants dispute these statements and maintain as follows: "The Minutes of the E-3 Ranch Trust from February 16, 1998 stated:

> FURTHER, RESOLVED that Francis L. McLain be and is hereby appointed as the Successor Trustee to take office and serve at the very moment that the current Trustee, Richard J. Humpal, fails to continue as Trustee due to death and/or physical and/or mental incapacity. . . .

Based on this language, Frank McLain would have been appointed as the successor trustee to Richard Humpal upon Mr. Humpal's death on April 5, 2013." *ECF No. 44 at 8-9.*

On April 10, 1998, American Bank of Montana ("American Bank") loaned Frank and Hall approximately $1,116,856.06 pursuant to a Note that was secured by a Mortgage ("American Bank Mortgage") encumbering the E-3 Ranch.

On August 1, 1998, Frank entered into an agreement, Contractual Duties and Compensation of Managing Director, with the purported E-3 Ranch Trust. Such duties included, among others, payment of any monthly mortgage, keeping the property in running order, and enhancing the value of the E-3 Ranch property through improvements.

On December 15, 1999, in lieu of foreclosure of the McLain Mortgage, a Quit Claim Deed was executed transferring title to the E-3 Ranch from Frank and Caroline to Bernard and Kathryn.

Beginning on April 24, 2002, until Bernard's death in 2009, Mary held a power of attorney on behalf of Bernard. On July 16, 2002, after Kathryn passed away, a Deed of Conveyance was executed by the

personal representative of Kathryn's estate transferring Kathryn's interest in the E-3 Ranch to Bernard.

On July 22, 2002, a Quit Claim Deed was executed purportedly transferring Bernard's interest in the E-3 Ranch to the E-3 Ranch Trust. Bernard began living on the E-3 Ranch full time on June 11, 2006, and continued to live there until his death on January 3, 2009.

The parties disagree about what family members lived on the E-3 Ranch and during what periods of time. First, the McLain Plaintiffs maintain that beginning in 1998 until Bernard began permanently residing at the E-3 Ranch, Bernard and Kathryn would spend at least two months out of each year living on the E-3 Ranch. They maintain that Bernard began living on the E-3 Ranch full time on June 11, 2006, and continued to live there until his death in 2009. The McLain Defendants do not dispute this latter assertion, but add that Bernard was a legal invalid during this time period, and stayed on the property under the supervision and care of Frank and his family. The McLain Defendants dispute the prior assertion concerning Bernard and Kathryn and maintain that: (1) Kathryn died on February 5, 2002; (2)

Bernard stayed with Frank and Caroline at the E-3 Ranch for about two months each year in 2002 and 2003, and about one month in 2004; (3) Faith placed Bernard in an assisted living facility from January 1, 2005, until abut July 6, 2005; (4) Bernard was declared a legal invalid at the end of June 2005; (5) Frank began to care for Bernard at the E-3 Ranch from July 6, 2005, until about October 25, 2005; (6) Christeen put Bernard in the Luther Memorial Home in Mayville, North Dakota where he resided from about October 26, 2005, through June 10, 2006; and (7) Bernard stayed at the E-3 Ranch from about June 11, 2006, until his death on January 3, 2009.

Second, the McLain Plaintiffs maintain that, beginning in 2002, Harley lived on the E-3 Ranch at least six months out of each year to care for Bernard until 2006, when Harley then resided on the E-3 Ranch full time. And, Harley lived on the E-3 Ranch full time from 2006 until Bernard died in 2009. The McLain Defendants dispute these assertions. They maintain that: (1) Frank believes that Harley lived full time at his home residence from 2002 through May 2006 to care for his wife who was suffering from a terminal illness; (2) from June 2006

through January 3, 2009, Frank paid Harley to stay at the E-3 Ranch to care for Bernard; and (3) Harley did not live on the property full time until June 2006.

Third, the McLain Plaintiffs maintain that Matthew lived on the E-3 Ranch with Harley and Bernard in 2006 and 2007. The McLain Defendants dispute this, and maintain that Matthew resided on the E-3 Ranch property only during September, November, and December of 2006, and that he was 14 years old at the time.

Fourth, the McLain Plaintiffs maintain that Christeen stayed on the E-3 Ranch from July through September 2008. The McLain Defendants dispute this and maintain that Christeen did not reside on the E-3 Ranch from July through September 2008.

Fifth, the McLain Plaintiffs maintain that for any of the time periods that Kathryn, Bernard, Harley, Matthew, or Christeen lived on the E-3 Ranch, they did not seek permission from or provide notice to Frank or Caroline to reside on the E-3 Ranch. The McLain Defendants dispute the various claims made by the McLain Plaintiffs concerning the time periods when the people discussed above allegedly lived on the

E-3 Ranch.  They further maintain that, to the extent that any of these people did spend time on the property, none of them lived there: (1) as if they owned a title interest in the property; (2) to stake a claim to the property; and (3) to object to, challenge, or compete with Caroline's exclusive possession, management, and control of the E-3 Ranch property from 2008 through the present.

On February 27, 2013, Richard Humpal, purportedly on behalf of the E-3 Ranch Trust, signed and recorded a Quit Claim Deed attempting to transfer title to the E-3 Ranch from the E-3 Ranch Trust to Caroline, without the approval of Mary or Harley, the other trustees of the E-3 Ranch Trust.  Mary did not approve of the February 27, 2013 Quit Claim Deed executed by Richard Humpal attempting to transfer title to the E-3 Ranch from the E-3 Ranch Trust to Caroline.  To Mary's knowledge, Harley did not approve of the transfer either.

On September 19, 2013, formal probate of Bernard's Estate was commenced in the Montana Sixth Judicial District Court, Park County. On June 11, 2014, those proceedings were stayed pending determination of title to the E-3 Ranch in this action.

At all times, Mary, as a Trustee of the purported E-3 Ranch Trust and as Bernard's power of attorney, believed that the purpose of the E-3 Ranch Trust was to preserve the value of the E-3 Ranch for the benefit of all of Bernard's children. The McLain Defendants dispute this and contend that the E-3 Ranch Trust was for the benefit of Caroline and Frank's children – Alakhi, Sohnja, and Dane.

Sohnja lived on the E-3 Ranch property from December 15, 1999, until September 2009, and again from May 2012-2015. Alakhi lived on the E-3 Ranch property at various times throughout period from 2006-2015. Dane, also an alleged beneficiary of the E-3 Ranch Trust, has assisted with mortgage payments and the tax payments for the property.

Frank and Caroline are co-managers of the fourth and final purported certificate holder of the E-3 Ranch Trust, the Tera Bani Retreat Ministries.

On August 1, 1998, Frank accepted duties to protect, preserve, and enhance the E-3 Ranch Trust's assets for its certificate holders. Although the E-3 Ranch was not property of the purported Trust at the

time the 1998 Contractual Duties and Compensation of Managing Director was executed by Frank, the parties agree that there is nothing in the agreement prohibiting it from applying in the future, when the E-3 Ranch was purportedly transferred. But the McLain Defendants dispute the McLain Plaintiffs' interpretation and application of the document.

The McLain Plaintiffs and the McLain Defendants dispute whether Mary, both as Trustee of the E-3 Ranch Trust and as Bernard's power of attorney, granted Caroline permission to reside on the E-3 Ranch, or whether she even had authority to do so. And, while Mary believed that Frank and Caroline and their children were living on the E-3 Ranch property to preserve it for Bernard's beneficiaries, the McLain Defendants dispute this and maintain that they have never lived on the E-3 Ranch with the purpose of preserving it for Bernard's beneficiaries.

The McLain Plaintiffs maintain that the McLain Defendants' use of the property was with the permission of the E-3 Ranch Trust as well as Bernard's beneficiaries. But the McLain Defendants dispute this

and note that the assertion derives only from Mary's belief that their use of the property was with permission. They maintain that Mary's belief is contrary to the facts and is not credible.

The McLain Plaintiffs maintain that, other than the transfer of the E-3 Ranch property to Caroline on February 27, 2013, which was purportedly for the benefit of the E-3 Ranch Trust beneficiaries, Caroline never provided notice to the E-3 Ranch Trust or Bernard's power of attorney that Caroline's possession of the property was somehow hostile. The McLain Defendants dispute this contention and maintain that Caroline has always held herself out to be the owner of the E-3 Ranch property. And, they maintain, because Caroline's use of the property was never permissive, there is no requirement that permissive use must ripen into hostile use to establish adverse possession.

The parties dispute whether the ownership of the E-3 Ranch was at issue at the time probate of Bernard's Estate was commenced.

Caroline has stated that she was the payer of all taxes on the E-3 Ranch property save for one payment in 2012, and that payment was

made by Soul Care, LLC.  But, the McLain Defendants maintain, the payment by Soul Care, LLC, was made on Caroline's behalf, the money paid was money Soul Care owed Caroline in wages, and the amount paid was accounted for as part of Caroline's wages on her W-2 form in 2013.

On April 24, 2015, Caroline and Frank filed a Declaration of Homestead stating that they reside upon and claim the E-3 Ranch as their homestead.

## IV.  Legal Standards

### A.  Rule 12(b)(6) Motion to Dismiss

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology,*

*Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F.Supp. 299, 304

(C.D. Cal. 1996) (*citing Western Mining Council v. Watt*, 643 F.2d 618,

624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

## B.      Rule 56 Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A

party seeking summary judgment always bears the initial

responsibility of informing the court of the basis for its motion, and

identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if

any, which it believes demonstrate the absence of a genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as

to a material fact is genuine if there is sufficient evidence for a

reasonable fact-finder to return a verdict for the nonmoving party.  *Id*.

If the moving party meets its initial responsibility, the burden then

shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When parties file cross-motions for summary judgment, as here, the Court must consider each motion on its own merits. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The fact that both parties have moved for summary judgment does not vitiate the Court's responsibility to determine whether disputed issues of material fact are present. *Id.*

## V. <u>Discussion</u>

### A. <u>The McLain Defendants' Motion to Dismiss the United States' Intervenor Complaint</u>

The McLain Defendants combined their summary judgment motion seeking a declaration that Caroline owns the E-3 Ranch via adverse possession with a Rule 12(b)(6) motion to dismiss the United States' Intervenor Complaint. The motions are interrelated to the extent of the United States' involvement in this action. Thus, the Court addresses the McLain Defendants' and the United States' arguments

relating to both motions in this part of the Findings and Recommendations.

### 1.  **Summary of the Parties' Arguments**

The McLain Defendants seek dismissal of the United States' claims in the Intervenor Complaint arguing that: (1) Caroline is the legal owner of the E-3 Ranch via adverse possession that occurred before tax liens against Frank arose thus foreclosing any claim the United States might have to the property, *McLain Defts' Opening Br. (ECF No. 24) at 13, 25*[6]; (2) the United States' attempt to enforce a trust fund recovery penalty against Frank violates the Fifth Amendment's Double Jeopardy Clause, *id. at 13, 25-31*; (3) the United States' alternate claim to foreclose on Frank's interest in Bernard's Estate should be dismissed because such an expectancy interest is not a cognizable property interest under Montana law, *id. at 13-14, 31-32*; and (4) the United States' claims are time-barred, *id. at 14, 32-37*.

---

[6]This argument depends upon a ruling respecting the parties' cross motions for summary judgment concerning whether Caroline owns the E-3 Ranch via adverse possession.  That issue is discussed in greater detail *infra.*

In response, the United States argues that: (1) the McLain Defendants' double jeopardy argument is misplaced because it conflates 26 U.S.C. § 6672's civil assessment of remedial penalties against Frank with penalties imposed for Frank's criminal conviction under 26 U.S.C. § 7202 and, while Frank may argue that some of the unpaid employment taxes underlying his § 6672 assessment have been paid, he carries the burden to prove payments have been made, *U.S.' Resp. Br. (ECF No. 29) at 4-5, 15-18*; (2) the United States' claims are not time-barred because the McLain Defendants have admitted that Frank retained beneficial ownership and control over the property at all relevant times and essentially admit that it was held in title only by a series of individuals and entities since Frank first purported to sign his interest away, *id. at 5, 12-15*; and (3) the United States' alternative claim for relief is valid because it seeks to foreclose on Frank's distinct property interest in Bernard's Estate if the McLain Plaintiffs prevail on their claims, and Frank cannot disclaim or reject his interest in Bernard's Estate to avoid his federal tax obligations, *id. at 5, 18-19*. And, to the extent the McLain Defendants seek summary judgment

that Caroline owns the E-3 Ranch via adverse possession, the United States argues that: (1) the summary judgment motion is premature because the United States has only recently entered this action and has not had time to conduct discovery, *id. at 6, 19-20*; and (2) even if Caroline is deemed to have adversely possessed the property, she holds the property only as Frank's nominee subject to the United States' tax liens, *id.*

### 2. <u>Analysis</u>

#### a. <u>Double Jeopardy</u>

The Fifth Amendment to the U.S. Constitution provides that: "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . .." Relevant to the case at hand, it is well-settled that the Double Jeopardy Clause "protects only against the imposition of multiple *criminal* punishments for the same offense," including monetary penalties. *Hudson v. United States*, 522 U.S. 93, 99 (1997) (emphasis in original) (citations omitted); *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 769 n.1 (1994) (citations omitted). As noted, the McLain Defendants argue that the United

States' assessment of penalties against Frank under 26 U.S.C. § 6672,

after he already has been convicted and punished under 26 U.S.C. §

7202 for essentially the same conduct, would be in violation of the

Double Jeopardy Clause.  The Court is not persuaded.

The Supreme Court in *Kurth Ranch* observed that it had

previously  recognized that "'[t]his constitutional protection is

intrinsically personal,' and that only 'the character of the actual

sanctions' can substantiate a possible double jeopardy violation."  *Id.*

at 779 (*quoting U.S. v. Halper*, 490 U.S. 435, 447 (1989)).  The Court

thus must determine the character of the § 6672 penalty and determine

whether it is civil, which would not offend the Double Jeopardy Clause,

or criminal in nature, in which case it would amount to double

jeopardy.

The Supreme Court has adopted a two-step process to determine

whether a penalty is civil or criminal: "(1) statutory construction to

determine whether Congress indicated an express or implied preference

for one label or the other; and if Congress intended to establish a civil

penalty, (2) an evaluation of whether the statutory scheme [is] so

punitive either in purpose or effect as to transform the intended civil sanction into a criminal penalty." *See Louis v. Commissioner of Internal Revenue*, 170 F.3d 1232, 1234 (9th Cir. 1999) (internal quotation marks omitted) (*citing Hudson v. United States*, 522 U.S. 93, 99 (1997)). And, the following "useful guideposts" exist to assist in evaluating whether the second step is satisfied:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment – retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id*. (internal citations and quotation marks omitted). "These factors are to be considered in relation to the statute on its face, and only the *clearest proof* will suffice to override legislative intent that a remedy be civil in nature." *Id*. (citations and quotation marks omitted) (emphasis added).

Respecting the first step in the *Hudson* two-step process, the Ninth Circuit has determined that "it is clear Congress intended

additions to tax for fraud to be 'a civil, not a criminal, sanction.'" *Id.* (*quoting Helvering v. Mitchell*, 303 U.S. 391, 402 (1938)). "*Mitchell*'s conclusion that Congress intended additions to tax for fraud to be a civil sanction is not limited to cases in which the taxpayer has previously been acquitted, rather than convicted, of criminal tax fraud." *Id.* (*citing Mitchell*, 303 U.S. at 401-05).

Here, the Court concludes that the conduct giving rise to Frank's conviction on nine counts under 26 U.S.C. § 7202, which the United States has characterized as "his willful failure to account for and pay over the employment taxes of Kirpal Nurses, LLC," is similarly the type of conduct for which Congress intended additions to tax to be a civil, and not criminal, sanction. *Id.* Thus, the Court further concludes that Congress intended that § 6672 penalties be civil and not criminal sanctions.

Respecting the second step, the McLain Defendants have neither persuasively argued in their Rule 12(b)(6) motion nor, at this juncture, produced the requisite "clearest proof" that the § 6682 penalty is so punitive as to overcome congressional intent that it be civil rather than

criminal in nature. First, as the Ninth Circuit has concluded, such penalties "do not amount to an affirmative disability or restraint, nor have they historically been regarded as punishment." *Id.* (*citing Hudson,* 522 U.S. at 104). Rather, the penalties have a remedial purpose in that they "are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government" for investigation expenses and loss stemming from the taxpayer's conduct. *Id.* (*quoting Mitchell,* 303 U.S. at 401 *and citing I & O Publishing,* 131 F.3d 1314, 1316 (9th Cir. 1997)). And, "[e]ven if deterrence is an additional purpose for the [penalty], the Supreme Court has recognized that monetary penalties may deter others without being criminal in nature." *Id.* (*citing Hudson,* 522 U.S. at 105 ("[T]he mere presence of this purpose is insufficient to render a sanction criminal.").

Second, it cannot reasonably be disputed that analysis of some of the guideposts could support the conclusion that § 6672's penalty is criminal rather than civil in nature, such as whether the behavior to which the penalty applies is already a crime. Clearly it is. *See* 26 U.S.C. § 7202. But that is not sufficient to make the penalty criminal

rather than civil in nature. *Louis*, 170 F.3d at 1235. As was the situation in *Louis*, although the conduct giving rise to imposition of the § 6672 penalty is the same or at least very similar to the conduct giving rise to criminal liability under § 7202, punishing such conduct cannot be said to be the primary focus of the § 6672 penalty. Rather, as the Ninth Circuit concluded in *Louis*, § 6672's penalty, imposed to address certain conduct, "is designed to ensure that the [penalty is] imposed only on taxpayers who engage in the type of deceptive behavior that is difficult and costly for the IRS to detect." *Id*. (citations omitted). Thus, this factor does not weigh convincingly on the side of finding that the § 6672 penalty is punitive. And, of course, "Congress may impose both civil and criminal penalties in connection with the same proscribed behavior without violating the Double Jeopardy Clause." *Id*. (citation omitted).

Third, the Court is not convinced that a remedial penalty such as that imposed under § 6672 is excessive. As noted, the United States has an interest in raising and protecting tax revenue, and the type of conduct giving rise to both the § 6672 penalty and § 7202 criminal

liability is considered to be the most difficult and costly for the IRS to detect. *Louis*, 170 F.3d at 1235. Thus, because of the onerous burden placed on the IRS in policing such conduct, it cannot reasonably be concluded that the penalty is so excessive as to alter its nature from civil to criminal.

In considering the guideposts *in toto*, the Court concludes that they do not weigh convincingly in favor of overcoming Congress' intent that the penalty be considered civil in nature, nor has there been a showing by "the clearest proof" that Congress' intent should be overridden. *Id.* For all of these reasons, assessment of § 6672's penalty does not violate the Double Jeopardy Clause.

### b.   <u>Timeliness of the United States' Claims</u>

As noted, the McLain Defendants argue that the United States' claims in its Intervenor Complaint are time-barred. *ECF No. 24 at 14, 32-37.* They maintain that a cause of action under the Montana Uniform Fraudulent Transfer Act must be brought within 4 years of the transfer or the cause of action to set aside the transfer will be terminated. *Id. at 33.* They argue that, because the United States

seeks to set aside the December 15, 1999 transfer of Frank's interest in the E-3 Ranch to his parents, Bernard and Kathryn, and all subsequent transfers of the property, the United States' action, brought 16 years after the 1999 transfer, is too late. *Id.* This argument is unpersuasive.

As this Court recently observed, "[t]he United States is subject to a limitations period only when Congress has expressly created one." *U.S. Bank v. United States Internal Revenue Service*, 2013 WL 788079, *7 (D. Mont., Mar. 1, 2013) (*citing Guaranty Trust Co. v. United States*, 304 U.S. 126, 133 (1938) (*citing United States v. Thompson*, 98 U.S. 486, 488-89 (1878))). "In the absence of a federal statute expressly imposing or adopting one, the United States is not bound by any limitations period." *Id.* (*quoting United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1489 (9th Cir. 1993)). Thus, "the United States is not bound by state statutes of limitations . . . in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940).

And, as in the case at hand, in instances in which the United States asserts that a taxpayer's property transfer is a fraudulent conveyance, the United States' assertion "is not limited to the time

period set for a state fraudulent conveyance proceeding, but rather is governed by the ten-year federal collection statute at 26 U.S.C. § 6502(a)(1)." *U.S. Bank*, 2013 WL 788079, *7 (*citing United States v. Bacon*, 82 F.3d 822, 825 (9th Cir. 1996)). The Ninth Circuit confirmed this conclusion in *Bresson v. Commissioner of Internal Revenue*. 213 F.3d 1173 (9th Cir. 2000).

Under *Bresson*, the United States is allowed to assert claims to collect delinquent taxes by attempting to set aside fraudulent conveyances attempting to shield property from collection, and foreclosing on federal tax liens. *U.S. Bank*, 2013 WL 788079, *8 (*citing Bresson, supra*). "District courts have applied *Bresson* to mean that the United States may bring fraudulent transfer actions pursuant to state law for the purpose of collecting taxes within the time frame permitted under federal law." *Id.* (*citing Sequoia Property and Equipment Ltd. Partnership v. United States*, 2000 WL 1728117 at *7 (E.D. Cal., Oct. 4, 2000)). That is precisely what the United States is attempting to do here. Thus, under the foregoing authority, the United States' claims, stemming from Trust Fund Recovery Penalty assessments made in

May 2014 against Frank (*ECF No. 20 at 4-5*), fall within 26 U.S.C. § 6502(a)(1)'s 10-year limitation period and are not time-barred.

### c.   Alternate Claim to Foreclose on Frank's Expectancy Interest

The McLain Defendants next challenge the United States' alternate claim to foreclose on Frank's interest in Bernard's Estate should the McLain Plaintiffs prevail on their theory that the E-3 Ranch should be declared an asset of Bernard's Estate. *ECF No. 24 at 13-14, 31-32*. The McLain Defendants argue that the United States "cannot sustain any action to foreclose on the expectancy interests that Frank [ ] might obtain in the E-3 Ranch property" if either a resulting trust is created or if the McLain Plaintiffs prevail on their theory that the property should be declared an asset of Bernard's Estate. They argue that any interest that might vest in Frank under these theories would be merely an expectancy interest and would not be a cognizable property interest under Montana law that could be foreclosed upon. *Id. at 14, 31-32*.

The Court concludes that this asserted basis to dismiss the United States' alternate claim is premature. The issue's resolution

depends upon resolution of, among other issues: (1) the McLain Plaintiffs' claims; (2) the United States' claims; (3) whether Caroline owns the property via adverse possession; and (4) whether Caroline holds title to the property through a transfer and, if so, whether she is merely Frank's nominee or transferee. As reflected in the discussion herein, at least some of those issues will need to be resolved before the McLain Defendants' asserted basis to dismiss the United States' alternate claim is ready for ruling. Thus, the Court will recommend that the McLain Defendants' motion to dismiss, to the extent it relates to this issue, be denied with leave to renew.

### d. Fact Issues Preclude Summary Judgment Respecting Caroline's Adverse Possession Argument

The McLain Defendants argue that Caroline assumed ownership of the E-3 Ranch via adverse possession under Montana law before the United States tax liens against Frank arose. *ECF No. 24 at 25*. Thus, they argue, any liens against property owned by Frank do not attach to the E-3 Ranch, and the Court, therefore, should grant summary judgment against the United States on its Intervenor Complaint. *Id*.

As discussed in greater detail below, genuine issues of material fact preclude summary judgment respecting whether Caroline holds title to the E-3 Ranch via adverse possession. Thus, the Court cannot recommend that the United States' Intervenor Complaint be summarily dismissed on this basis.

For all of the foregoing reasons, the Court will recommend that the McLain Defendants' motions to dismiss and for summary judgment, to the extent that they are asserted against the United States, be denied as discussed herein.

## B. Cross Motions for Summary Judgment – Adverse Possession

Through cross motions for summary judgment, the McLain Plaintiffs and the McLain Defendants seek the Court's ruling on the McLain Defendants' counterclaim asserting that Caroline owns the E-3 Ranch via adverse possession.

### 1. Summary of the Parties' Arguments

The McLain Defendants argue that Caroline's possession of the E-3 Ranch meets all of the elements of adverse possession under Montana law. *ECF No. 24 at 19-25.* They argue that she has possessed the

entire ranch property for more than the requisite 5-year period, and that such possession has been: (1) actual, because she and her immediate family have made various improvements to the property and, even when she was not physically residing there, she leased out the property to residential tenants, *id. at 19-20*; (2) visible, because it has been out in the open and never hidden, covert, or masked to deceive any other claimants, *id. at 20*; (3) exclusive, because her possession has not depended on a like right by any other person and no one else has made any necessary payments to protect, maintain, secure, conserve, repair, enhance, or improve the property, nor has anyone else had actual possession and control of it, *id. at 20-21*; (4) continuous, because her possession has not been interrupted by an act of the owner or any other claimant, nor has she abandoned her possession of the property, *id. at 21*; and (5) hostile, because her possession has been without permission of any other person or entity, *id. at 21-23*.

The McLain Plaintiffs argue both that the McLain Defendants are not entitled to summary judgment on their adverse possession counterclaim and that the Court should grant their own summary

judgment motion on that claim because the McLain Defendants cannot prove it. *ECF No. 31 at 8.* The McLain Plaintiffs advance two principal arguments.

First, the McLain Plaintiffs argue that the Court should deny the McLain Defendants' summary judgment motion because Caroline cannot establish exclusive, hostile use of the E-3 Ranch property for the requisite 5-year statutory period. *Id. at 8, 17-27.* They argue that: (1) as noted above, other family members lived on the E-3 Ranch during certain times since May 5, 2008, including Bernard, Harley, Matthew, and Christeen, *id. at 18-19*; (2) none of these family members sought permission from or provided notice to Caroline or Frank, and all of these individuals' use of the property would be considered a competing claim to title disrupting Caroline's claim to exclusive use of the property, *id.*; (3) the McLain Defendants' adverse possession claim fails under their own version of the facts because they assert that the E-3 Ranch Trust was for the benefit of Alakhi, Sohnja, and Dane, two of whom lived on the property with Caroline during the claimed period of adverse possession, and one of whom assisted with mortgage and tax

payments for the property, thus defeating Caroline's claim of exclusive possession and use, *id. at 19-20*; (4) Caroline's use of the E-3 Ranch was not hostile because her use has been permissive both because of Frank's assumption of duties to protect, preserve, and enhance the E-3 Ranch Trust's assets for its certificate holders, which makes Caroline's residence on the property permissive, and because Mary, both as Trustee of the E-3 Ranch Trust and as Bernard's power of attorney, granted Caroline permission to reside on the E-3 Ranch, *id. at 21-23*; (5) Caroline's use never ripened into hostile possession because her use was permissive and such permission was never repudiated, *id. at 23-24*; and (6) none of the McLain Defendants ever provided notice of a hostile claim to the E-3 Ranch property sufficient to oust the cotenants from the property, *id. at 24-27*.

Second, the McLain Plaintiffs argue that the Court should grant their own summary judgment motion respecting the McLain Defendants' adverse possession counterclaim. *Id. at 8, 27-29.* They argue that: (1) Caroline cannot establish actual, visible, exclusive, hostile, and continuous possession for the full statutory 5-year period

by the necessary clear and convincing evidence, *id*.; and (2) Caroline has not paid all of the taxes assessed on the property for the statutory period, *id. at 29*.

## 2. <u>Analysis</u>

In Montana, a party claiming real property by adverse possession must prove such possession has been "actual, visible, exclusive, hostile and continuous" for a period of five years. *YA Bar Livestock Co. v. Harkness*, 887 P.2d 1211, 1213 (Mont. 1994); *see also* MCA §§ 70-19-401, 70-19-405. As an additional element, a "claimant cannot prove adverse possession of any land on which he did not pay taxes." *Tester v. Tester*, 3 P.3d 109, 114 (Mont. 2000) (citation omitted); *see also* MCA § 70-19-411.

A party asserting adverse possession via a summary judgment motion must establish each element by clear and convincing evidence in order to be entitled to judgment as a matter of law. *Meadow Lake Estates Homeowners Ass'n v. Shoemaker*, 178 P.3d 81, 88 (Mont. 2008) (citations omitted). The Montana Supreme Court has adopted the following definition of "clear and convincing evidence":

[C]lear and convincing proof is simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure – that is, it must be more than a mere preponderance but not beyond a reasonable doubt.

*Wareing v. Schreckendgust*, 930 P.2d 37, 43 (Mont. 1996) (*quoting*

*Matter of J.L.*, 922 P.2d 459, 462 (Mont. 1996)).

Where, as in the case at hand, a party claiming title not founded on color of title – color of title being defined as "possession based on a written instrument which purports to pass title but which in reality does not" – *YA Bar*, 887 P.2d at 1216 (*quoting Joseph Russell Realty Co. v. Kenneally*, 605 P.2d 1107, 1111 (Mont. 1980), continued occupation of the land at issue must be exclusive of any other's rights. *See* MCA § 70-19-409.[7] "Exclusive use" means that the claimant's right "must rest

---

[7]The Court is mindful that Caroline claims "record ownership" of the property, or at least part of it, based on two recorded transactions: (1) "[s]he first obtained a 1/4 interest in the property via quitclaim deed executed by Brad D. Hall on May 5, 2008[,]" *ECF No. 3-3 at 7*; and (2) "[t]he remaining 3/4 interest in the property was transferred to Caroline of February 27, 2013 from the E-3 Rank Trust via a quitclaim deed[,]" *id*. *See also Caroline's Aff. (ECF No. 3-3) at ¶¶ 16-17 and*

upon its own foundation, and not depend upon a like right in any other person." *Bonnie M. Combs-DeMaio Living Trust v. Kilby Butte Colony, Inc., Corp.*, 109 P.3d 252, 256 (Mont. 2005) (citation omitted). And, to be "continuous and uninterrupted," use must not have been "interrupted by an act of the owner of the land or by the voluntary abandonment by the party claiming the right." *Meadow Lake Estates Homeowners Ass'n*, 178 P.3d at 89.

Here, having considered the entire record, the Court concludes that genuine issues of material fact exist that prevent the McLain Defendants from proving, by the requisite clear and convincing evidence, each of the elements of adverse possession. By the same token, fact issues also preclude summary judgment in the McLain Plaintiffs' favor on the issue of whether Caroline holds the E-3 Ranch

---

*McLain Defendants' Answer and Counterclaims (ECF No. 6) at ¶¶ 17-20.* The McLain Defendants maintain that if it is determined that Caroline has not had actual legal title as a result of these two quitclaim deeds, she has had color of title as a result of the deeds. And, of course, she claims she nevertheless should be deemed to have held the property adversely because of her continual occupation and possession of the property for the required 5 years. *Id. at ¶¶ 20-21.*

via adverse possession. Thus, the Court must recommend that both motions for summary judgment be denied.

A genuine issue of material fact exists, for example, concerning whether Caroline's use of the E-3 Ranch was exclusive. As noted above, the McLain Defendants claim that her use was exclusive and continuous from May 5, 2008, for more than the statutory 5-year period. They have filed Caroline's affidavit and Frank's affidavit so stating. *See Caroline's Aff. (ECF No. 3-3) at 87-93; Frank's Aff. (ECF No. 3-3) at 42-48.*

But the McLain Plaintiffs have filed Mary's affidavit asserting that Caroline's use was not exclusive. Relying on Mary's affidavit, they maintain that: (1) Bernard lived on the property permanently from 2006 until he died on January 3, 2009, which falls within the statutory 5-year period; (2) Harley resided on the property from 2006 until Bernard's death, again during the 5-year period; (3) Matthew lived on the property with Bernard and Harley, although not during the period in which Caroline claims adverse possession; and (4) Christeen lived on the property from July through September 2008, during the 5-year

period. *Mary's Aff. (ECF No. 32-1) at 3-4.* Mary also states in her affidavit that: (1) she held a power of attorney on Bernard's behalf from April 24, 2002, until his death; (2) it was always her understanding that the E-3 Ranch Trust was for the benefit of Bernard's heirs, to be distributed equally to his six children at the time of his death if he died without a will; (3) neither Bernard, Harley, Matthew, nor Christeen ever requested permission from Frank, Caroline, or anyone else to live on the E-3 Ranch; and (4) she, holding Bernard's power of attorney, believed that Frank, Caroline, and their children used the E-3 Ranch with the permission of Bernard, the E-3 Ranch Trust, and Bernard's beneficiaries to maintain and preserve it for all of Bernard's children. *Id. at 3-4.*

Although the McLain Defendants contest the veracity and possibly the foundation upon which Mary's affidavit was made, those are issues more appropriately considered by the trier of fact, and not by the Court, on summary judgment motions. Thus, in light of the foregoing conflicting evidence, the Court cannot conclude that the McLain Defendants have satisfied all of the elements, by clear and

convincing evidence, to establish Caroline' adverse possession of the E-3 Ranch during the statutory 5-year period. Similarly genuine issues of material fact preclude summary judgment on the issue in favor of the McLain Plaintiffs.

## VI. <u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that: (1) the McLain Defendants' motion to dismiss the United States' Intervenor Complaint (*ECF No. 23*) be DENIED; and (2) the parties' cross-motions for summary judgment (*ECF No. 23 and ECF No. 30*) be DENIED.

The McLain Plaintiffs' summary judgment motion (*ECF No. 36*) concerning the validity of the E-3 Ranch Trust and, alternatively, the transfer of the ranch to one of the family members are more properly addressed after the District Court's rulings on the foregoing motions (*ECF Nos. 23 and 30*).

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and

recommendation must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after service

hereof, or objection is waived.

DATED this 24th day of October, 2016.


/s/ Carolyn S. Ostby
United States Magistrate Judge