IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FAITH MCLAIN, CHRISTEEN MCLAIN, JOHN MCLAIN, MOLLY MCLAIN, MIRA MCLAIN, AND MATTHEW MCLAIN, AS BENEFICIARIES OF THE ESTATE OF BERNARD MCLAIN, AND MARY MCLAIN, INDIVIDUALLY AS BENEFICIARY OF THE ESTATE OF BERNARD MCLAIN AND AS TRUSTEE OF THE E-3 RANCH TRUST,<br><br>              Plaintiffs,<br><br>vs.<br><br>FRANCIS MCLAIN, INDIVIDUALLY AND AS CO-MANAGER OF TERA BANI RETREAT MINISTRIES, CAROLINE MCLAIN, INDIVIDUALLY AND AS MANAGING DIRECTOR OF TERA BANI RETREAT MINISTRIES, ALAKHI JOY MCLAIN, SOHNJA MAY MCLAIN, AND DANE SEHAJ MCLAIN, AS PURPORTED CERTIFICATE HOLDERS OF THE E-3 RANCH TRUST,<br><br>              Defendants.<br><br>THE UNITED STATES OF AMERICA, | CV 16-36-BLG-SPW<br><br>**OPINION AND ORDER** |

1

Intervenor
                              Defendant and
                              Counter/Cross-
                              Claimant,

vs.

FAITH MCLAIN, CHRISTEEN
MCLAIN, JOHN MCLAIN,
MOLLY MCLAIN, MIRA
MCLAIN, AND MATTHEW
MCLAIN, as Beneficiaries of THE
ESTATE OF BERNARD
MCLAIN; and MARY MCLAIN, as
Beneficiary of the ESTATE OF
BERNARD MCLAIN, and as
Trustee of the E-3 RANCH
TRUST,

                              Counterclaim
                              Defendants and

FRANCIS MCLAIN, individually,
and as Co-Manager of TERA
BANI RETREAT MINISTRIES;
CAROLINE MCLAIN,
individually, and as Managing
Director of TERA BANI
RETREAT MINISTRIES; and
ALAKHI JOY MCLAIN, SOHNJA
MAY MCLAIN, AND DANE
SEHAJ MCLAIN, as Beneficiaries
of the E-3 RANCH TRUST,

                              Crossclaim
                              Defendants and

| AMERICAN BANK OF MONTANA and BRAD D. HALL |
|---|
| Additional Defendants on United States' claims. |

This action for declaratory judgment principally concerns the ownership of a ranch located in the Paradise Valley known as the E-3 Ranch. (Doc. 1.) Presently before the Court is Plaintiffs' Motion for Summary Judgment Re: Validity of Trust and Transfer of E-3 Ranch to Caroline McLain. (Doc. 36.) This motion is fully briefed and ripe for the Court's review. (Docs. 37, 38, 53, 54, 57.)

Having considered the parties' submissions, the Court GRANTS Plaintiffs' motion for summary judgment (Doc. 36.)

I. BACKGROUND

A. Factual Background[1]

Magistrate Judge Ostby previously described the factual background and the relationship of the parties in this case at length in her October 24, 2016, Findings and Recommendations. (Doc. 67.) The Court presumes familiarity with the basic

---

[1] The background facts are from the parties' submissions. Unless otherwise noted, the parties do not dispute them.

3

factual background, and will discuss only those facts relevant to the Court's determination of Plaintiffs' motion for summary judgment.

Bernard McLain ("Bernard") and Kathryn McLain ("Kathryn") had six children. After Kathryn and Bernard passed away, their children and grandchildren fell into a dispute concerning ownership of the E-3 Ranch, which was purportedly owned by different members of the family at various times. Plaintiffs are Faith McLain ("Faith"), Christeen McLain ("Christeen"), John McLain ("John"), Mary McLain ("Mary"), Molly McLain ("Molly"), Mira McLain ("Mira"), and Matthew McLain ("Matthew").[2] Faith, Christeen, John, and Mary are siblings and the children of Bernard and Kathryn. Molly, Mira, and Matthew are the children of James McLain, also known as Harley McLain ("Harley"), who was also one of Bernard and Kathryn's children, and is now deceased.

Defendants are Francis McLain, also known as Frank McLain ("Frank"), Caroline McLain ("Caroline"), Alakhi Joy McLain ("Alakhi"), Sohnja May McLain ("Sohnja"), and Dane Sehaj McLain ("Dane").[3] Frank is one of Bernard

---

[2] Faith, Christeen, John, Molly, Mira, and Matthew are suing as beneficiaries of the Estate of Bernard McLain ("Bernard's Estate"). Mary is suing in her capacity as beneficiary of Bernard's Estate and as Trustee of the E-3 Ranch Trust. (Doc. 5.)

[3] Frank is named individually and as Co-Manager of Tera Bani Retreat Ministries. Caroline is named individually and as Managing Director of Tera Bani Retreat Ministries. Alakhi, Sohnja, and Dane are named as purported certificate holders of the E-3 Ranch Trust. (Doc. 5.)

4

and Kathryn's children. Caroline is Frank's wife, and Alakhi, Sohnja, and Dane are Frank and Carolines's children.

On June 21, 1996, a Limited Warranty Deed was executed transferring title to the real property at issue in this case (referred to as the "E-3 Ranch" or "Property") from the Dorothy H. Malcolm Revocable Living Successor Trust to Frank and an individual named Brad. D. Hall. (Doc. 54 at ¶ 5.)

On February 16, 1998, a Contract and Declaration for an "Irrevocable Pure Trust Organization," referred to as the E-3 Ranch Trust, was drafted at the request of Frank. (*Id.* at ¶ 11.) Frank hired Richard Humpal to set up the E-3 Ranch trust after meeting him at a "financial planning conference here in Montana" in order to protect Frank's interest in the E-3 Ranch "against possible future creditors." (*Id.* at ¶ 12.)

The alleged purpose of the E-3 Ranch Trust, as stated in the Preamble of the Contract and Declaration of Trust was as follows:

> The purpose of this indenture is that these same assets will be promptly conveyed to the Trust and controlled by a Trustee or a Board of Trustees, so as to constitute the Corpus of the Trust created for the benefits of the holders of Trust Certificate Units, with these assets to be held in fee simple, the Trustee(s) of this Trust to provide for the safe, logical and economical administration thereof by natural and/or artificial persons acting in a fiduciary capacity, to begin forthwith.

(*Id.* at ¶ 16; Doc. 38-7.)

The E-3 Ranch Trust provided for the issuance of 100 Trust Certificate Units. (Doc. 54 at ¶14 (Section Four); Doc. 38-7 (Section Four).) The Trust Certificate Units were "transferrable by an appropriate assignment in writing and by its surrender to the Trustees," subject to acceptance or rejection by the Trustees. (*Id.*) The E-3 Ranch Trust limits all liability to funds, property, and assets of the Trust. (*Id.* (Section Eleven).)

The E-3 Ranch Trust provided for the appointment of one or more trustees, including the appointment of an Executive Trustee. (Doc. 38-7 (Section Three).) The Trust also provided that a trustee could be any person, and could be replaced in a variety of ways. (*Id.*) Richard Humpal, Mary, and Harley were named as trustees of the E-3 Ranch Trust. (Doc. 54 at ¶ 18.) Richard Humpal and Harley are now deceased. (*Id.*) Defendants dispute whether a successor trustee has been appointed, and whether Richard Humpal was ever appointed as Executive Trustee. (*Id.* at ¶¶ 18-19.)

On August 1, 1998, an agreement between Frank and the E-3 Ranch Trust titled "Contractual Duties and Compensation of Managing Director" was executed and approved by Richard Humpal as Executive Trustee. (Doc. 38-8.) The agreement stated Frank was the "day-to-day Managing Director of the E-3 Ranch Trust," and set forth a list of duties he was responsible for. (*Id.*) The duties included payment of any monthly mortgage, keeping the property in running order,

enhancing the value of the property through improvements, bringing in revenue, and setting up rules for the Tera Bani Retreat's meditation retreats and childrens' camps. (*Id.*) The Agreement also indicated that the 100 Trust Certificate Units had been issued equally to Alakhi, Dane, Sohnja, and the Tera Bani Retreat.[4] (*Id.*) Defendants dispute Plaintiffs' contention that Frank retained authority over the E-3 Ranch Property via the Agreement. (Doc. 54 at ¶ 17.)

The E-3 Ranch Trust has not filed with the Montana Secretary of State as a business trust and the Secretary of State has not issued the E-3 Ranch Trust a certificate of organization or license to do business in the State of Montana. (Doc. 54 at ¶ 15.) Defendants dispute any assertion that the E-3 Ranch Trust was obligated to file any papers with the Secretary of State or receive a certificate of organization or license to do business. (*Id.*) Defendants claim the E-3 Ranch Trust was not running a business and did not receive any business income. (*Id.*)

On December 15, 1999, Frank and Caroline executed a Quit Claim Deed transferring title to the E-3 Ranch from Frank and Caroline to Bernard and Kathryn, in lieu of foreclosure on a $290,000.00 mortgage that was secured by the Property. (Doc. 54 at ¶¶ 8-10, 21.)

---

[4] Frank is Co-Manager of Tera Bani Retreat Ministries, and Caroline is Managing Director of Tera Bani Retreat Ministries. (Doc. 6 at ¶¶ 8-9.)

On July 16, 2002, after Kathryn passed away, a Deed of Conveyance was executed by Bernard, as the personal representative of Kathryn's estate that transferred Kathryn's interest in the E-3 Ranch to Bernard. (Doc. 54 at ¶ 22.)

On July 22, 2002, a Quit Claim Deed was executed purportedly transferring Bernard's interest in the E-3 Ranch to the E-3 Ranch Trust. (Doc. 54 at ¶ 23.)

On January 3, 2009, Bernard passed away. (Doc. 54 at ¶ 24.)

On February 27, 2013, Richard Humpal purportedly acting on behalf of the E-3 Ranch Trust, signed a Quit Claim Deed attempting to transfer title to the E-3 Ranch from the E-3 Ranch Trust to Caroline. (Doc. 54 at ¶ 25.) The transfer was without the signature of Mary or Harvey, the other trustees of the E-3 Ranch Trust. (*Id.* at ¶ 26.) Mary did not approve of the transfer of the Property to Caroline, and to Mary's knowledge, Harvey did not approve either. (*Id.* at ¶¶ 27-29.)

### B. Procedural Background

Plaintiffs originally brought this action in Montana state court. (Doc. 1.) On March 11, 2016, the state court granted the United States' motion to intervene. (Doc. 1-3.) On April 8, 2016, the United States removed, invoking the Court's jurisdiction under 28 U.S.C. § 1441. (Doc. 1.)

Thereafter, Plaintiffs and Defendants filed cross-motions for summary judgment (Docs. 23, 30), and Defendants filed a motion to dismiss the United States' Intervenor Complaint. (Doc. 23.) Plaintiffs also filed the instant motion

for summary judgment regarding the validity of the E-3 Ranch Trust. (Doc. 36.)

On October 24, 2016, Judge Ostby issued Findings and Recommendations on the cross-motions for summary judgment and the motion to dismiss. (Doc. 67.) Judge Ostby deferred addressing the instant motion for summary judgment until after the Court ruled on the other motions. (*Id.* at 45.)

On February 23, 2017, this Court adopted the Findings and Recommendations, and denied the parties' cross-motions for summary judgment and Defendants' motion to dismiss. (Doc. 75.) Accordingly, Plaintiffs' motion for summary judgment regarding the validity of the E-3 Ranch Trust is now ready for resolution.

## II. LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this initial burden, the burden shifts to the non-moving party. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts." *Id.*; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

## III. DISCUSSION

Plaintiffs argue the Court should find the E-3 Ranch Trust is invalid under Montana law, and as a result, declare the transfer of the E-3 Ranch property into the E-3 Ranch Trust void. (Doc. 37.) Plaintiffs present two alternative arguments in the event the Court finds the trust is valid. First, Plaintiffs contends that if the E-3 Ranch Trust constitutes any entity under Montana law, it is a resulting trust for the benefit of Bernard, and since he is deceased, his estate. (*Id.*) Second, Plaintiffs

argue that even if the E-3 Ranch Trust is valid, and the transfer of the E-3 Ranch into the Trust was valid, the transfer of the Property from the Trust to Caroline was invalid because it failed to comply with the express terms of the E-3 Ranch Trust. (*Id.*) Defendants counter that the E-3 Ranch Trust is valid under Montana law, that no justification exists for declaring the Trust a resulting trust, and that the transfer of the E-3 Ranch to Caroline was valid because Frank was acting as Executive Trustee with authority to transfer the Property. (Doc. 53.)

### A. Validity of the E-3 Ranch Trust Under Montana Law

The Montana Supreme Court has held that trust entities with objective indicia of a business organization are not valid "ordinary" trusts under Montana law. In *Ruby Mountain Trust v. Dep't of Revenue*, 300 Mont. 297 (2000), the Montana Supreme Court invalidated a trust that was similar to the E-3 Ranch Trust at issue in this case. There, the appellants transferred a 500-plus-acre family farm located in Manhattan, Montana, to an "irrevocable" trust. *Id.* at 298. The trust had been created according to a trust establishment kit the family had purchased after attending a "financial planning" seminar in Montana. *Id.* at 298-299. The trust issued 100 "certificates of beneficial interest" to the appellants and their children in exchange for the farm property. *Id.* Following creation of the trust, a "caretaker agreement" was entered with the one of appellants for his farming and management services. *Id.* at 299.

11

The issue before the Court in *Ruby Mountain* was whether the trust was legally valid under Montana state law, and therefore qualified as an "ordinary" trust for state tax purposes. *Ruby Mountain Trust*, 300 Mont. at 298. The Court set forth five factors to consider in determining if a trust "constitutes an impermissible business trust or a legitimate ordinary trust." *Id.* at 303. The factors are: (1) whether the trustees function in nearly the same manner as directors of a corporation for purposes of carrying on the business enterprise at issue; (2) centralized management; (3) continuity of life; (4) transferability of interests; and (5) limited personal liability. *Id.* at 304 citing *Morrissey v. Commissioner of Internal Revenue*, 296 U.S. 344, 358-359 (1935). Upon consideration of the factors, the Court found the "distinguishing features of a business trust" were manifest in the trust at issue, and therefore it was not a valid "ordinary" trust. *Ruby Mountain Trust*, 300 Mont. at 304.

The Court also indicated the *Ruby Mountain* trust was not valid under Montana Code Ann. § 72-33-108(4),[5] which provided that "a trust does not include

---

[5] Defendants call into question the viability of *Ruby Mountain* because § 72-33-108 was repealed and replaced by the Montana Uniform Trust Code in 2013. The repeal of § 72-33-108 is of no consequence in this case because the Court must apply the law that was in effect at the time the Trust was created to determine its validity. *See New Hope Lutheran Ministry v. Faith Lutheran Church of Great Falls*, 374 Mont. 229, 248 (2014); *Gibbs v. Altenhofen*, 376 Mont. 61, 68 n.3 (2014). Section 72-33-108 was in effect in 1998 when the E-3 Ranch Trust was created. Therefore, the Court finds *Ruby Mountain* is controlling.

'business trusts providing for *certificates to be issued to beneficiaries.*'" *Id.* at 302. The Court noted that "the issuance of certificates of beneficial interest or UBIs by the Trust is analogous to the issuance of stocks or shares by a corporation, thus taking such a 'business trust' out from under the provisions of Title 72 of the Montana Code applicable to ordinary trusts." *Id.* at 302. Accordingly, the Court concluded the trust at issue in *Ruby Mountain* was an "abusive business trust," and not a legitimate "ordinary" trust under Montana law. The Court further held "since the Trust is void under Montana law, any transfer of property to the Trust is likewise void," and therefore, the appellants were personally liable for Montana state taxes. *Id.* at 306.

Defendants argue *Ruby Mountain* is not applicable here because this is not a tax case. Defendants assert *Ruby Mountain*'s discussion of Montana law concerning trusts should be limited to the tax context in which it arose. Defendants further assert that the E-3 Ranch Trust was never intended to be a business trust, and should therefore be treated as a "regular" private trust.

The Court disagrees with Defendants' interpretation of *Ruby Mountain*. The trust-creation issue was at the forefront of the Court's analysis. As the Court noted "the only disagreement between the parties is the legal question of the validity of the Trust." *Ruby Mountain Trust*, 300 Mont. at 301. The resolution of that disagreement had tax consequences in *Ruby Mountain*, whereas here, resolution of

the issue will have consequences for determining ownership of the E-3 Ranch. The fact the *Ruby Mountain* Court's analysis of Montana trust law arose in the context of a disputed tax liability does not make its discussion of Montana trust law any less controlling. The *Ruby Mountain* Court stated that in order to determine the appellants' tax liability, the Court would have to answer the question of whether the trust itself was valid under Montana law. *Ruby Mountain Trust*, 300 Mont. at 301-302 ("The crux of this case is the application of § 72-33-108(4), MCA, which defines what constitutes a legitimate 'trust' under Montana law."). Therefore, the Court analyzed Montana trust law and found the trust was invalid, due to certain characteristics it had. *Id.* at 304-305. Because the trust was invalid, the Court concluded it could not operate as a tax shelter for the appellants. There is no indication that the *Ruby Mountain* Court would have found the trust valid for any other purpose. Indeed, "[a] 'void thing' is no thing; it has no legal effect whatsoever and no right whatever can be obtained under it or grow out of it. In law it is the same thing as if the 'void thing' had never existed." *Lowery v. Garfield County*, 122 Mont. 571, 584 (1949).

Turning to the analysis of whether the E-3 Ranch Trust is a valid "ordinary" trust under the factors set forth in *Ruby Mountain*, the Court finds the undisputed facts show the Trust is not valid under Montana law. First, the E-3 Ranch Trust provided for the issuance of Trust Certificate Units to beneficiaries. (Doc. 38 at

¶14 (Section 4).) The Trust Certificate Units are analogous to the "certificates of beneficial interest" in the *Ruby Mountain* case. In *Ruby Mountain*, the Court explained that 'certificates of beneficial interest" are essentially identical to shares or stocks issued by a corporation or business entity for purposes of identifying rights to distributable income. *Ruby Mountain Trust*, 300 Mont. at 304. Therefore, Frank's children, Alakhi, Dane, and Sohnja, and Frank and Caroline's ministry enterprise, the Tera Bani Retreat, are effectively "shareholders" in the E-3 Ranch Trust. (Doc. 38-8.)

Second, Frank had authority to exercise substantial managerial discretion over the E-3 Ranch Property. The E-3 Ranch Trust was created at Frank's direction. (Doc. 54 at ¶¶ 11-12.) Following creation of the E-3 Ranch Trust, a "Contractual Duties and Compensation of Managing Director" agreement was executed between Frank and the Trust.[6] (Doc. 38-8.) The agreement provides that Frank was to be the "day-to-day Managing Director of the E-3 Ranch Trust." (*Id.*) Based on the agreement, Frank had authority to make monthly mortgage payments,

---

[6] Defendants do not dispute the fact the management agreement exists, do not dispute its contents, or point to any facts that the agreement is invalid. However, Defendants dispute Plaintiffs' wording in their Statement of Undisputed Facts, that Frank "retained" any authority over the E-3 Ranch property, pursuant to agreement. (*See* Doc. 54 at ¶ 17.) The Court finds Defendants' quibble with Plaintiffs' verbiage does not create a genuine issue of material fact. Moreover, Defendants do not cite to materials in the record to support this purportedly disputed fact. Therefore, the Court will consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

pay monthly utilities, keep the property in running order, enhance the property through improvements such as building structures for meditation retreat participants and campers, and keep accounts of the monthly expenses in maintaining the property. (*Id.*) Frank also had authority to sell portions of the Trust's property, bring in revenue by charging campers and retreatants, rent the property, and set up rules for the property related to Tera Bani Retreat's mission. (*Id.*) Further, the evidence suggests there has been little change in Frank's relationship to the E-3 Ranch Property. Prior to the time the E-3 Ranch Property was transferred to the E-3 Ranch Trust, Frank stated that he "made all the payments for the mortgage, real estate taxes, and property insurance." (Doc. 38-5 at ¶ 17.) Therefore, as in *Ruby Mountain*, there was centralized management of the E-3 Ranch Trust.

Third, the E-3 Ranch Trust provides that trustees can be any person, and can be replaced in a variety of ways, including death, removal and resignation. (Doc. 38-6 (Section 3); Doc. 38-7.) Therefore, the E-3 Ranch Trust has a continuity of life more similar to a business entity.

Fourth, the Trust Certificate Units are easily transferrable. The E-3 Ranch Trust provides the Certificates can be transferred "by an appropriate assignment in writing and by its surrender to the Trustees." (Doc. 38 at ¶14 (Section 4).) The only limitation on transfers is that the Trustees "may accept or reject all transfers

at their sole option." (*Id.*) Therefore, the Trust Certificate Units are similar to shares or stocks in a business entity.

Finally, liability is limited to the funds, property and assets of the E-3 Ranch Trust. The trustees and managing directors have no personal liability for trust debts, similar to a corporation. (Doc. 38 at ¶14 (Section 7).)

In sum, the Court finds the E-3 Ranch Trust is not meaningfully distinguishable from the invalid trust in *Ruby Mountain*, and therefore, it is not a valid "ordinary" trust under Montana law. Further, because it is undisputed that the E-3 Ranch Trust provided for certificates to be issued to beneficiaries, it was not a valid trust under Montana law, as it existed at the time the Trust was created. *See* former Mont. Code Ann. § 72-33-108 (providing the term "'Trust' . . . does not include business trusts providing for certificates to be issued to beneficiaries").

In addition, Plaintiffs argue the E-3 Ranch Trust is not a valid business trust because it has never complied with Mont. Code Ann. § 35-5-201.[7] Defendants do not contend that the E-3 Ranch Trust should be recognized as a business trust, and instead argue it is in substance a "regular private trust." (Doc. 53 at 10.) As discussed above, the Court has determined the E-3 Ranch Trust is not a valid

---

[7] Section 35-5-201 requires business trusts seeking to transact business in the state to file with the Secretary of State: (1) an executed copy of its articles, declarations of trust, or trust agreement by which the trust was created, (2) a verified list of the names, residences, and post-office addresses of its trustees, and (3) an affidavit setting forth its assumed business name, if any. Mont. Code Ann. § 35-5-201(5).

ordinary trust. The Court notes, however, that it is undisputed the E-3 Ranch Trust has not complied with § 35-5-201. (Doc. 54 at ¶ 15.) Defendants argue in their Statement of Disputed Facts that the Trust was not obligated to file any papers with the Secretary of State because the E-3 Ranch Trust has never conducted business in Montana. (*Id.*) To the extent Defendants' arguments regarding the Trust's obligations under the statute could be considered disputed facts, the Court finds they are insufficient to create a genuine issue of material fact. The only factual support Defendants cite is Frank's conclusory affidavit that claims the Trust never engaged in "business activities." (*See* Doc. 38-5 at ¶¶ 30-33.) However, the affidavit is not supported by any detailed facts or supporting evidence. *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Therefore, the Court finds Defendants have failed to demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

Having considered the entire record, the Court concludes that no genuine issue of material fact exists that precludes the Court from finding the E-3 Ranch Trust is invalid as a matter of law, and the transfer of the E-3 Ranch Property into the E-3 Ranch Trust void.

B. **Alternative Arguments Assuming the Trust is Deemed Valid.**

In light of the Court's finding that the Trust is invalid under Montana law, it is unnecessary to address Plaintiffs' alternative arguments. Accordingly, for the reasons discussed above, the Court finds Plaintiffs' motion for summary judgment should be GRANTED.

IV. **CONCLUSION**

Based on the foregoing, the Plaintiffs' Motion for Summary Judgment Re: Validity of Trust and Transfer of E-3 Ranch to Caroline McLain (Doc. 36) is GRANTED.

DATED this 14th day of March, 2017.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge