IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FAITH MCLAIN, CHRISTEEN MCLAIN, JOHN MCLAIN, MOLLY MCLAIN, MIRA MCLAIN, AND MATTHEW MCLAIN, AS BENEFICIARIES OF THE ESTATE OF BERNARD MCLAIN, AND MARY MCLAIN, INDIVIDUALLY AS BENEFICIARY OF THE ESTATE OF BERNARD MCLAIN AND AS TRUSTEE OF THE E-3 RANCH TRUST, | CV 16-36-BLG-SPW-TJC |
| Plaintiffs, | **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| vs. | |
| FRANCIS MCLAIN, INDIVIDUALLY AND AS CO-MANAGER OF TERA BANI RETREAT MINISTRIES, CAROLINE MCLAIN, INDIVIDUALLY AND AS MANAGING DIRECTOR OF TERA BANI RETREAT MINISTRIES, ALAKHI JOY MCLAIN, SOHNJA MAY MCLAIN, AND DANE SEHAJ MCLAIN, AS PURPORTED CERTIFICATE HOLDERS OF THE E-3 RANCH TRUST, | |
| Defendants. | |
| THE UNITED STATES OF AMERICA, | |
| Intervenor Defendant and Counter/Cross-Claimant, | |

1

vs.

FAITH MCLAIN, CHRISTEEN
MCLAIN, JOHN MCLAIN, MOLLY
MCLAIN, MIRA MCLAIN, AND
MATTHEW MCLAIN, as
Beneficiaries of THE ESTATE OF
BERNARD MCLAIN; and MARY
MCLAIN, as Beneficiary of the
ESTATE OF BERNARD MCLAIN,
and as Trustee of the E-3 RANCH
TRUST,

Counterclaim
Defendants and

FRANCIS MCLAIN, individually, and
as Co-Manager of TERA BANI
RETREAT MINISTRIES; CAROLINE
MCLAIN, individually, and as
Managing Director of TERA BANI
RETREAT MINISTRIES; and
ALAKHI JOY MCLAIN, SOHNJA
MAY MCLAIN, AND DANE SEHAJ
MCLAIN, as Beneficiaries of the E-3
RANCH TRUST,

Crossclaim
Defendants and

AMERICAN BANK OF MONTANA
and BRAD D. HALL

Additional
Defendants on
United States'
claims.

2

This action for declaratory judgment principally concerns the ownership of a ranch located in the Paradise Valley known as the E-3 Ranch.  (Doc. 1.)  Judge Watters has referred the case to the undersigned under 28 U.S.C. § 636(b)(1)(B).  (Doc. 80.)  Presently before the Court are Defendants' Motion for Partial Summary Judgment Quieting Title to ½ Interest in the E-3 Ranch (Doc. 82), and Plaintiffs' Motion for Summary Judgment Re: Count III of McLain Defendants Counterclaim.  (Doc. 96)  The motions are fully briefed and ripe for the Court's review.  (Docs. 83, 89, 90, 91, 97, 106, 112, 120.)

Having considered the parties' submissions, the Court **RECOMMENDS** Defendants' Motion for Partial Summary Judgment be **DENIED**, and Plaintiffs' Motion for Summary Judgment be **DENIED**, as set forth below.

## I.    BACKGROUND

### A.    Factual Background[1]

Bernard McLain ("Bernard") and Kathryn McLain ("Kathryn") had six children.  After Kathryn and Bernard passed away, their children and grandchildren fell into a dispute concerning ownership of the E-3 Ranch, which

---

[1] Magistrate Judge Ostby previously described the factual background and the relationship of the parties in this case at length in her October 24, 2016 Findings and Recommendations.  (Doc. 67 at 4-19.)   The Court presumes familiarity with the basic factual background.  The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment and are taken from the parties' submissions.

was purportedly owned by different members of the family at various times.

Plaintiffs are Faith McLain ("Faith"), Christeen McLain ("Christeen"), John

McLain ("John"), Mary McLain ("Mary"), Molly McLain ("Molly"), Mira McLain

("Mira"), and Matthew McLain ("Matthew").[2]  Faith, Christeen, John, and Mary

are siblings and the children of Bernard and Kathryn.  Molly, Mira, and Matthew

are the children of James McLain, also known as Harley McLain ("Harley"), who

was also one of Bernard and Kathryn's children, and is now deceased.

Defendants are Francis McLain, also known as Frank McLain ("Frank"),

Caroline McLain ("Caroline"), Alakhi Joy McLain ("Alakhi"), Sohnja May

McLain ("Sohnja"), and Dane Sehaj McLain ("Dane").[3]  Frank is one of Bernard

and Kathryn's children.  Caroline is Frank's wife, and Alakhi, Sohnja, and Dane

are Frank and Caroline's children.

On June 21, 1996, Frank and an individual named Brad. D. Hall ("Hall")

purchased the real property at issue in this case (referred to as the "E-3 Ranch" or

"Property") from the Dorothy H. Malcolm Revocable Living Successor Trust.

---

[2] Faith, Christeen, John, Molly, Mira, and Matthew are suing as beneficiaries of the Estate of Bernard McLain ("Bernard's Estate").  Mary is also suing in her individual capacity as beneficiary of Bernard's Estate, and as Trustee of the E-3 Ranch Trust.  (Doc. 5.)

[3] Frank is named individually and as Co-Manager of Tera Bani Retreat Ministries. Caroline is named individually and as Managing Director of Tera Bani Retreat Ministries.  Alakhi, Sohnja, and Dane are named as purported certificate holders of the E-3 Ranch Trust.  (Doc. 5.)

(Doc. 5-1 at 1-2.)  The Limited Warranty Deed conveying the Property to Frank and Hall did not contain a declaration of joint interest between Frank and Hall, or indicate the share or interest each would take.  (*Id.*; Doc. 98 at ¶ 2.)

In order to purchase the property, Frank and Hall obtained a loan for $1,000,000 from American Bank, secured by a mortgage on the property (the "American Bank Mortgage").  (Doc. 98 at ¶ 4.)  The Promissory Note for the loan named Frank and Hall as the borrowers, and Frank and Hall both signed the note. (*Id.* at ¶¶ 5, 6.)

On November 30, 1996, Bernard and Kathryn loaned Frank and Caroline $290,000.  (Doc. 113 at ¶ 6-7.)  Frank and Caroline executed a mortgage (the "McLain Mortgage") in favor of Bernard and Kathryn, and the E-3 Ranch was identified as collateral.  (*Id.*; Doc. 5-1 at 14-36.)

On February 16, 1998, an "Irrevocable Pure Trust Organization," referred to as the E-3 Ranch Trust, was created at the request of Frank (the "E-3 Ranch Trust" or "Trust").  (Doc. 5-2 at 1-19.)  Richard Humpal, Mary, and Harley were named as trustees of the E-3 Ranch Trust.  (Doc. 54 at ¶ 18.)  Richard Humpal and Harley are now deceased.  (*Id.*)

On April 10, 1998, American Bank refinanced the $1,000,000 loan.  (Doc. 98 at ¶ 8.)  The amount of the refinanced loan was $1,116, 865.06.  (*Id.*)  Frank and

5

Hall both signed the Promissory Note for the refinanced loan, and were identified as borrowers.  (*Id.* at ¶¶ 9-10.)

In the summer of 1998, Frank "informally quit-claimed" 10 acres of the Property to Hall, and Hall began preparing a plot to build a log home.  (Doc. 113 at ¶¶ 4-5.)  Hall began the process of applying for an official subdivision with Park County in the summer of 1999 (the "Hall Minor Subdivision").  (*Id.* at ¶ 10.)

On December 15, 1999, Frank and Caroline executed a Quit Claim Deed transferring title to the E-3 Ranch to Bernard and Kathryn, ostensibly in lieu of foreclosure on the $290,000.00 McLain Mortgage.  (Doc. 113 at ¶¶ 8-9; Doc. 5-1 at 37.)

On August 17, 2000, Bernard executed an addendum to his Last Will and Testament, providing that the E-3 Ranch should be devised as follows: "25% to be divided equally amongst my six children: Christeen A. McLain, Francis L. McLain, Harley J. McLain, Faith McLain Kirchdorfer, Mary McLain Bram and John Bernard (J.B.) Mclain and 25% to Alakhi J. McLain, 25% to Dane W. McLain, 25% to Sohnja M. McLain."  (Doc. 5-3 at 27.)  Previously, Bernard's Last Will and Testament provided all of his property, real, personal and mixed, should be devised to his children, Christeen, Frank, James, Mary, Faith, and John "equally, share and share alike."  (Doc. 5-3 at 25-26.)

On June 13, 2002, First American Title Company prepared a Subdivision Guarantee for Hall with regard to the proposed Hall Minor Subdivision. (Doc. 114-8.)

On July 16, 2002, after Kathryn passed away, a Deed of Conveyance was executed by Bernard, as the personal representative of Kathryn's estate, which transferred Kathryn's interest in the E-3 Ranch to Bernard. (Doc. 89 at ¶ 13; Doc. 5-2 at 27-28.)

On July 22, 2002, a Quit Claim Deed was executed purportedly transferring Bernard's interest in the Property to the E-3 Ranch Trust.[4] (Doc. 89 at ¶ 14; Doc. 5-2 at 29.)

On October 29, 2002, a Release of Part of Mortgaged Premises was recorded, whereby Bernard released Frank and Caroline from the McLain Mortgage as to the Hall Minor Subdivision. (Doc. 5-3 at 3-4.)

On October 30, 2002, a Special Warranty Deed was executed between the E-3 Ranch Trust and Hall, conveying approximately 20 acres to Hall. (Doc. 5-1 at 4-9.)

The intent of the October 30, 2002 transfer was purportedly memorialized in an agreement signed by Frank and Hall dated February 3, 2003, which stated "[f]or

---

[4] The Court determined the E-3 Ranch Trust was invalid. (Doc. 78.) Therefore, the transfer of the E-3 Ranch Property into the E-3 Ranch Trust was void. (*Id.* at 18.)

7

co-signing on the mortgage on [the E-3 Ranch] Frank McLain offered 10 acres of the property to Brad Hall in June 1996."  (Doc. 98 at ¶ 17; Doc. 5-1 at 3.)  The Agreement further stated that due to county regulations that made it nearly impossible to subdivide 10 acres, Hall would obtain 20 acres and agree to hold 10 acres in trust for Caroline.  (*Id.*)  The Agreement indicated the 10 acre plot held in trust for Caroline would eventually be re-surveyed and a boundary adjustment made delineating two 10 acre plots.  (*Id.*)

On February 18, 2003, American Bank released Brad Hall from the American Bank Mortgage as to the 20 acre Hall Minor Subdivision.  (Doc. 5-3 at 1-2.)

On March 26, 2003, a second Subdivision Guarantee was prepared for Hall by First American Title Company regarding the proposed Hall Minor Subdivision. (Doc. 114-9.)

On June 18, 2003, a Quit Claim Deed and the Special Warranty Deed signed on October 30, 2002 were recorded, whereby a 20.008 acre tract of land was subdivided out of the E-3 Ranch Property and deeded to Hall.  (Doc. 113 at ¶ 17; Doc. 5-1 at 10-13.)

On June 11, 2004, a "Declaration of and Claim of Rights in and to Land Patents" in the E-3 Ranch was recorded (the "Land Patents Claim").  (Docs. 114-1; 114-2.)  Affidavits from Frank, Bernard, and Harley and Richard Humpal (as

trustees), were attached to the Land Patents Claim.  (Doc. 114-2.)  In Frank's

Affidavit he stated:

> Brad D. Hall and I became co-signers on a Promissory Note
> and Mortgage to American Bank of Montana on June 21, 1996
> relating to the [E-3 Ranch] property.  To reimburse Brad for his part
> in helping with the financing of the purchase of the property by
> becoming a co-signer with me on the Promissory Note and Mortgage,
> Brad D. Hall agreed to accept 10 acres of the property and other
> benefits that were not real estate property.  These 10 acres were
> informally quit-claimed by myself to him in the summer of 1998, at
> which time he started preparing a plot to build a log home.  Because it
> was agreed that Brad would have his promised 10 acres "free and
> clear" from any lien or encumbrance, he started the process of
> applying for an official subdivision with Park County in the summer
> of 1999.  It was decided that a 20-acre subdivision would be easier to
> get approved, and Brad would own his 10 acres within that
> subdivision.  Brad further helped to arrange an agreement with
> American Bank of Montana to release any of their interest upon those
> 20 acres now called the Hall Minor Subdivision.  The whole
> subdivision process took quite some time to be approved, and was not
> officially finalized and recorded until June 18, 2003.
>
> Therefore, as of June 18, 2003, Brad D. Hall has been
> reimbursed in full for his participation in helping with the original
> financing of the property by being a co-signer with myself on the
> Promissory Note and Mortgage and, excepting the 10 acres belonging
> to him within that portion known as the Hall Minor Subdivision, he
> has no further claim on the rest of the above-described real property.

(Doc. 114-2 at 8-9.)

In Harley and Richard Humpal's Affidavit, they asserted:

> That except for that 20-acre portion known as the Hall Minor
> Subdivision in the Southwest Quarter (SW¼) of Section 26, Brad D.
> Hall has no interest in the title of the three above-mentioned tracts
> ever since the following two deeds were made and filed at the Park
> County Recorders Office in Livingston, Montana:

> a.      The Quit Claim Deed of Francis L. McLain and Bernard
> A. McLain to Brad D. Hall made on February 10, 2003 (filed on June
> 18, 2003) in Roll 190 Pages 561-564) and
> b.      The Special Warranty deed of the E-3 Ranch Trust to
> Brad D. Hall made on October 30, 2002 (filed on June 18, 2003 in
> Roll 190 Pages 565-570).

(Doc. 114-2 at 3-4.)

Frank has submitted a declaration stating that the Land Patents Claim and associated Affidavits were recorded to forestall any potential foreclosure action by American Bank on the $1 million loan, and were not intended to slander Hall's ½ interest.  (Doc. 114 at ¶¶ 7-8.)

On August 31, 2004, a Warranty Deed and two Quit Claim Deeds were recorded relating to a 34 acre tract of land on the E-3 Ranch that was sold to an individual named Daryl B. Williams (the "Williams Parcel").  (Doc. 98 at ¶¶ 18-20; Doc. 5-2 at 30-41.)  On August 26, 2004, Hall executed a Quit Claim Deed releasing his ownership interest in the Williams Parcel to Frank.  (Doc. 98 at ¶ 18; Doc 5-2 at 38-39.)  On August 27, 2004, Frank executed a Quit Claim Deed transferring his interest in the parcel to the E-3 Ranch Trust.  (Doc. 98 at ¶ 19; Doc. 5-2 at 40-41.)  On August 27, 2004, the E-3 Ranch Trust (through Frank signing for the trustees) conveyed the Williams Parcel to Daryl B. Williams.  (Doc. 98 at ¶ 20; Doc. 5-2 at 30-37.)

On October 22, 2004, American Bank filed a Lis Pendens against the E-3

Ranch, indicating Frank and Hall were in default on the American Bank Mortgage.

(Doc. 5-2 at 42-43.)

On October 25, 2004, American Bank filed a lawsuit to foreclose on the

American Bank Mortgage (the "Foreclosure Suit").  (Doc. 114-3.)  The

Foreclosure Suit named both Frank and Hall as defendants, as well as Caroline, the

E-3 Ranch Trust and Bernard.  (*Id.*)

On December 13, 2004, Hall was released from any obligation under the

American Bank Mortgage pursuant to a change in terms agreement entered into

with American Bank.  (Doc. 98 at ¶ 22; Doc. 114-6.)  On December 23, 2004, the

Foreclosure Suit was dismissed.  (Doc. 114-7.)

On May 5, 2008, Hall executed a Quit Claim Deed transferring his interest

in the E-3 Ranch to Frank and Caroline.  (Doc. 113 at ¶ 20; Doc. 3-3 at 79-80.)

The Quit Claim Deed was not recorded until almost two years later, on April 23,

2010.  (Doc. 3-3 at 79.)

Also on May 5, 2008, Frank purportedly[5] executed a Quit Claim Deed

transferring his interest in the Property to the E-3 Ranch Trust. (Doc. 113 at ¶ 21;

---

[5] It is not clear when the Quit Claim Deed was actually signed.  Frank admitted at his resentencing hearing that he had created false quit claim deeds in 2011, while he was in prison, in an effort to remove his name from the Property.  (Doc. 98-1 at 23-31.)  Also, the notary stamp does not include a date when the document was signed before the notary.  (Doc. 3-3 at 81.)  Further, the notary stamp indicates the

Doc. 3-3 at 81.)  The Quit Claim Deed was not recorded until July 27, 2011.  (Doc. 3-3 at 81.)

In November of 2008, Frank was convicted of failing to account for and pay over federal employment taxes, in *United States v. Francis L. McLain*, 08-CR-10-PJS-FLN, U.S. Dist. Court, District of Minnesota.  (Doc. 98-1.)

On January 3, 2009, Bernard passed away.  (Doc. 54 at ¶ 24.)

On April 23, 2010, the Quit Claim Deed dated May 5, 2008 from Hall to Frank and Caroline was recorded.  (Doc. 3-3 at 79.)  On April 23, 2010, Hall also recorded an Affidavit averring that he was "presently a record owner of a one-half interest" in the E-3 Ranch Property, and that he had recorded a Quit Claim Deed relinquishing all of his interest in the property.  (Doc. 98 at ¶ 24; Doc. 3-3 at 76-77.)  The Affidavit further stated that Frank and Hall were identified as Mortgagors in the American Bank Mortgage, and that he appeared as a co-borrower on the Promissory Note with Frank.  (Doc. 98 at ¶ 25; Doc. 3-3 at 76-77.)  Hall further stated that he had been released from the obligation of the Promissory Note upon settlement of the foreclosure suit.  (Doc. 3-3 at 77.)

---

notary's commission expired on August 28, 2014.  (*Id.*) A notary's commissions in South Dakota is six years.  S.D. Codified Laws § 18-1-1.  Therefore, it is questionable that the notary verified Frank's signature on May 5, 2008, which was more than six years before the commission of the notary expired.

On July 27, 2011, the Quit Claim Deed dated May 5, 2008 from Frank to the E-3 Ranch Trust was recorded.  (Doc. 3-3 at 81.)

On November 1, 2011, Frank appeared for a resentencing hearing before the Honorable Patrick J. Schiltz of the United States District Court for the District of Minnesota.  (Doc. 98-1.)  At the hearing, Frank was questioned about the May 5, 2008 Quit Claim Deed that was recorded on July 27, 2011, which transferred the Property from Frank to the E-3 Ranch Trust.  (*Id.* at 19-31.)  Frank testified that Hall was supposed to have Quit Claimed his interest in the E-3 Ranch to the E-3 Ranch Trust, and not to Frank and Caroline.  (*Id.* at 20.)  Because of Hall's alleged mistake, Frank admitted he created documents that were false on their face in order to extinguish his interest in the Property.  (*Id.* at 26-27.)

On February 27, 2013, Richard Humpal, purportedly acting on behalf of the E-3 Ranch Trust, signed a Quit Claim Deed attempting to transfer the Property from the E-3 Ranch Trust to Caroline.  (Doc. 98 at ¶ 29; 3-3 at 82.)

On September 19, 2003, formal probate of Bernard's estate commenced in the Montana Sixth Judicial District Court, Park County.  (Doc. 5 at ¶ 34.)  On June 11, 2014, the state court stayed formal probate of Bernard's estate pending determination of title to the E-3 Ranch.  (Doc. 5-3 at 7.)

## B.    Procedural Background

Plaintiffs originally brought this action in Montana state court on July 8,

2014.  (Doc. 1.)   In their Amended Complaint filed on August 15, 2014, the Plaintiffs seek a declaration that: (1) the E-3 Ranch Trust, into which the ranch was purportedly placed is invalid; (2) that the attempted transfer of the ranch to the E-3 Ranch Trust is invalid; and (3) the ranch, with certain exceptions, is an asset of Bernard's Estate.

The Defendants answered and asserted counterclaims, which included a counterclaim ("Counterclaim III") to quiet title on the 164.5 acres quit claimed by Brad Hall.  (Doc. 6 at 30-32.)

On March 11, 2016, the state court granted the United States' motion to intervene.  (Doc. 1-3.)  On April 8, 2016, the United States removed, invoking the Court's jurisdiction under 28 U.S.C. § 1441.  (Doc. 1.)

Thereafter, Plaintiffs and Defendants filed cross-motions for summary judgment regarding adverse possession (Docs. 23, 30), Defendants filed a motion to dismiss the United States' Intervenor Complaint (Doc. 23), and Plaintiffs filed a motion for summary judgment regarding the validity of the E-3 Ranch Trust.  (Doc. 36.)

On February 23, 2017, Judge Watters adopted the Findings and Recommendations of Magistrate Judge Ostby, and denied the parties' cross-motions for summary judgment regarding adverse possession and Defendants' motion to dismiss the United States' Intervenor Complaint.  (Doc. 75.)

14

On March 14, 2017, Judge Watters granted Plaintiff's motion for summary judgment regarding the validity of the E-3 Trust.  (Doc. 78.)  Judge Watters found the E-3 Ranch Trust is invalid as a matter of law, and the transfer of the E-3 Ranch Property into the E-3 Ranch Trust was void.  (*Id*. at 18.)

On April 27, 2017, Defendants filed the instant motion for partial summary judgment, seeking to quiet title to a one-half interest in the E-3 Ranch Property (Doc. 82).  On June 20, 2017, Plaintiffs' filed a cross motion for summary judgment on Count III of the Defendants' Counterclaim, which is a claim to quiet title to Hall's ½ interest in the Property.  (Doc. 96.)  In short, both motions seek to determine the ownership of the same one-half interest in the E-3 Ranch.

## II.    LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party.  *Id*.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

15

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,

16

1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact. *Kennan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).

## III.   DISCUSSION

Defendants contend the face of the original deed conveying the E-3 Ranch to Frank and Hall creates a presumption that they each owned a ½ interest in the Property. Defendants further argue Hall's equal ownership is supported by the fact he was a co-signer and equally liable for the $1 million loan on the Property.

17

Defendants state Hall's ownership was not disturbed until he conveyed his ½ interest to Frank and Caroline in 2008, after he had been released from the American Bank Mortgage.  Therefore, Defendants contend title and legal ownership of the ½ interest should be quieted in Frank and Caroline.

Plaintiffs counter that when Frank and Hall purchased the Property, they clearly intended for Hall to receive only 10 acres in exchange for Hall's assistance in obtaining financing, and that Hall's ownership interest was always limited to 10 acres.  Plaintiffs contend Frank and Hall memorialized that understanding in their February 3, 2003 agreement (Doc. 5-1 at 3), and Frank further confirmed that agreement in his June 11, 2004 sworn Affidavit (Doc. 114-2 at 8-9).  Plaintiffs further argue that when Frank and Caroline transferred the Property to Bernard and Kathryn in 1999, they conveyed the entire Property, minus Hall's 10 acres.[6]  Thus,

_____

[6] The United States has filed Responses to both Defendants' and Plaintiffs' motions.  (Docs. 89, 106.)  The United States indicates it does not oppose the relief requested by Defendants, or a finding by the Court that Hall conveyed a ½ interest in the E-3 Ranch to Frank and Caroline.  However, the United States contends it cannot confirm or deny whether the facts the parties rely on are undisputed without conducting discovery.  The United States requests that the Court hold a settlement conference with the parties.  To the extent the United States is seeking to take discovery under Federal Rule of Civil Procedure 56(d), the request is denied.  The United States has not met its burden to show relief is warranted under Rule 56(d). *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 827-28 (9th Cir. 2008).  Further, the Court declines to schedule a settlement conference at this time.  Defendants have indicated they are unwilling to engage in settlement negotiations.  (*See* Docs. 116, 117.)  If the parties mutually agree that a settlement conference would be beneficial, they are invited to file a renewed request.

the E-3 Ranch passed to Frank's Estate upon his death, and should be quieted to the beneficiaries of his estate.

## A.     Disputed Issues of Material Fact Preclude Summary Judgment

Under Montana law, "[e]very interest created in favor of several persons in their own right . . . is an interest in common" unless it is a partnership asset or declared to be a joint tenancy with right of survivorship.  *In re Estate of Hill*, 931 P.2d 1320, 1324 (Mont. 1997) (quoting Mont. Code Ann. § 70-1-314).  When "the parties do not expressly declare that the ownership interest created in the instrument of title or transfer is a joint tenancy or joint interest or a partnership interest, then a tenancy in common or interest in common will be created."  *Matter of Estate of Shaw*, 855 P.2d 105, 111 (Mont. 1993).

There is a presumption that tenants in common hold equal shares of the property.  *Flood v. Kalinyaprak*, 84 P.3d 27, 33 (Mont. 2004); *Poepping v. Monson*, 353 P.2d 325, 330 (Mont. 1960) ("It is the rule that when property is purchased by two persons without specifying any other interest, the inference arises prima facie that each owns an undivided one-half interest.").  The presumption shifts, however, where there is evidence of unequal contribution.  *Flood*, 84 P.2d at 286.  In that event, the presumption will be that the parties own the property in proportion to their contribution.  *Id.*  The Montana Supreme Court has made clear, however, that both presumptions are subject to rebuttal.  *Id.* at 286-7.  The determinative factor

is the parties' intent.  *Id.*  The Montana Supreme Court summarized these principles as follows:

> Tenants in common are presumed to own equally.  When there is evidence of unequal contribution to an asset, tenants in common are presumed to own in proportion to their contribution.  Evidence of a different intent may be introduced to rebut either presumption.  The intent of the cotenants must be proven by a preponderance of the evidence, and may be demonstrated by conduct over the course of time, sharing of other expenses, labor, or any other admissible means.

*Flood*, 84 P.3d at 33.

Here, the original deed that transferred the E-3 Ranch to Frank and Hall did not specify what interest would be held by one or the other.  (Doc. 5-1 at 1-2.) Accordingly, the presumption arises that they each owned an undivided ½ interest. *Poepping*, 353 P.2d at 330.  But this is not a "straightforward" case, as Defendants argue, where the issue of ownership can be resolved based on the presumption. Plaintiffs have come forward with evidence to rebut the prima facie inference that Frank and Hall owned the Property equally.  Plaintiffs point to a course of conduct that would support their contention that Frank and Hall did not intend to take equal ownership of the E-3 Ranch.  However, Plaintiff's evidence as to the parties' intent is also not beyond dispute.

Ultimately, the Court finds several disputed issues of material fact are present in this action, which preclude a finding of summary judgment for either party.  For example, Defendants point to evidence in the chain of title tending to

show Hall had a ½ interest in the Property until he transferred it to Frank and Caroline in 2008.  There is evidence Hall was a co-signer for the $1 million American Bank Mortgage, and remained liable for the loan until he was released from it in 2004.  (Docs. 98 at ¶¶ 4, 8-10.)  Hall's actions in quitclaiming his interest in the 34 acre parcel that was sold to Daryl Williams, and his later conveyance of his interest to Frank and Caroline after he was released from the $1 million mortgage, also arguably support Defendants' position.  (Docs. 5-2 at 38-39; 114-6; 3-3 at 79-90.)  Defendants have also filed a declaration from Frank that attempts to explain and give context to Frank's June 11, 2004 Affidavit.  (Doc. 114 at ¶¶ 7-8.)

On the other hand, Plaintiffs point to evidence that Hall's interest in the E-3 Ranch was limited to 10 acres, which he obtained in exchange for co-signing on the American Bank Mortgage.  This is supported by evidence that Frank conveyed 10 acres to Hall as early as the summer of 1998, and the written Agreement executed by Frank and Hall in February 2003, which confirmed their arrangement. (Doc. 5-1 at 3.)  There is also the Affidavit from Frank that was recorded on June 11, 2004, where he declared that other than the 10 acres, Hall had no further claim to the rest of the E-3 Ranch property.  (Doc. 114-2 at 8-9.)  A similar statement was made in an Affidavit signed by Harley and Richard Humpal.  (Doc. 114-2 at 3-4.) Plaintiffs also cite to statements Frank made at his resentencing hearing in November 2011, where he asserted Hall made a mistake by quitclaiming the

21

property to Frank and Caroline in 2008.  (Doc. 98-1.)  In fact, in order to accept the Defendants' position, the fact finder would have to conclude that Frank has made multiple false declarations concerning the intent of the parties to these transactions.

There is also evidence that Hall's contributions towards the purchase and upkeep of the Property was disproportionate.  Frank and Caroline do not dispute they have paid the mortgage, and all payments for taxes, insurance and other expenses on the Property over the years.  (Doc. 113 at ¶ 28.)  In their counterclaim, the Defendants allege that they have contributed $2,422,023 in cash and labor valued at $416,700 toward the purchase and maintenance of the property.  (Doc. 6 at 28.)  Hall's contribution, other than signing the Promissory Note, is unknown.

In light of the tangled history, a record of inconsistent transactions, and multiple inconsistent statements regarding the parties' ownership intent, the Court finds there are clearly disputed issues of material fact with regard to what Hall's ownership interest actually was.  This is ultimately a question of the parties' intent, to be determined by the jury based on evidence of the conduct of the parties over the course of time.  The parties' respective motions for summary judgment should, therefore, be denied.

### B.    Standing and Statute of Limitations

Defendants also argue Plaintiffs' claims regarding the alleged ½ Hall interest are barred by the statute of limitations set forth in Montana Code Annotated § 70-

22

19-402, and that Plaintiffs lack standing.  The Court finds Plaintiffs are not barred by the statute of limitations.[7]

Montana Code Annotated § 70-19-402 provides:

No cause of action or defense to an action, arising out of the title to real property . . . can be effectual unless it appear that the person prosecuting the action or making the defense or under whose title the action is prosecuted or the defense is made or the ancestor, predecessor, or grantor of such person was seized or possessed of the premises in question within 5 years before the commencement of the act in respect to which such action is prosecuted or defense is made.

Mont. Code Ann. § 70-19-402.

There is some question whether this statute of limitations is even applicable here.  The Montana Supreme Court has characterized this statute as an adverse possession statute.  *King v. Rosebud County*, 631 P.2d 711, 718 (Mont. 1981).  Nevertheless, even if the statute is applicable to the present dispute, it does not bar Plaintiffs' claim to the disputed property.  The Plaintiffs were "seized or possessed" of the property by operation of law upon Bernard's death.

The E-3 Ranch Trust has been declared void by this Court.  (Doc. 78.)  Therefore, Bernard's transfer of the E-3 Ranch into the E-3 Ranch Trust was void.  As a result, the E-3 Ranch remained vested in Bernard.  (*Id.* at 17.)  Upon his

---

[7] The state court previously determined that the statute of limitations did not bar Plaintiffs' claims.  (Doc. 10 at 17-20.)  In the state court's analysis of the issue, the court indicated Defendants could seek declaratory relief of their own, and raise the statute of limitations at that time.  (*Id.* at 20.)  Defendants have followed the court's recommendation, and asserted counterclaims against Plaintiffs.

death, the Property vested in the devisees who were named in his last will. Mont. Code Ann. § 72-3-101(2) ("Upon the death of a person, the decedent's real and personal property devolves to the persons to whom it is devised by the decedent's last will."); *Shephard v. Widhalm*, 290 P.3d 712, 716 (Mont. 2012) ("A devisee's title to the property does not depend upon receiving a deed or decree of distribution. Rather, as § 72-3-101(2) indicates, title to the property vests in the devisee at the moment of the testator's death."). Bernard's Last Will and Testament, as amended on August 17, 2000, stated Plaintiffs were to each take a percentage interest in the E-3 Ranch.[8] (Doc. 5-3 at 27.) Therefore, Plaintiffs' title to their interests in the Property vested immediately upon Bernard's death on January 3, 2009, and the Plaintiffs have been "seized" of the property since that time. *See*, *Stephens v. Hurly*, 563 P.2d 546 (Mont. 1977) (describing modern seisin as "practically the same thing as ownership," and stating that "[a]ctual occupancy is not essential to lawful seisin . . . .") *Id.*, quoting 68 Am. Jur. 2d, Property § 40.

As to the issue of standing, the state court previously held Plaintiffs had standing to pursue their declaratory judgment action. (Doc. 10 at 9-11.) The Court

---

[8] Plaintiffs indicate the parties disagree about the percentages they are entitled to as beneficiaries of Bernard's estate. (Doc. 120 at 6, n.2.) As Plaintiffs point out, that is an issue before the probate court, in *In the Matter of the Estate of Bernard A. McLain*, Montana Sixth Judicial District Court, Cause No. DP-2013-41 ("Probate Matter").

declines to disrupt that determination here.  *See* Mont. Code Ann. § 27-8-204 (A person interested as a devisee or heir of an estate may bring a declaratory judgment action to determine a question arising in the administration of the estate.)   The Court also finds that Plaintiffs have standing to defend Defendants' quiet title Counterclaim by virtue of their having title to an interest in the Property by operation of § 72-3-101(2).

The Court notes, however, that at this point, it does not appear there is any party who can pursue or defend claims on behalf of Bernard's estate because a personal representative has not been appointed.  (*See* Doc. 120 at 11.)  Because issues affecting Bernard's estate are likely to arise as this case continues, the Court recommends that this action be stayed until a personal representative can be appointed in the probate matter and joined as a party to this action.

## IV.   CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that:

1.      Defendants' Motion for Partial Summary Judgment Quieting Title to ½ Interest in the E-3 Ranch (Doc. 82) be **DENIED**.

2.      Plaintiffs' Motion for Summary Judgment Re: Count III of McLain Defendants Counterclaim (Doc. 96) be **DENIED**.

3.      This action be stayed pending appointment of a personal representative for Bernard McLain's estate by the probate court.

25

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 17th day of January, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

26