IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FAITH MCLAIN, CHRISTEEN MCLAIN, JOHN MCLAIN, MOLLY MCLAIN, MIRA MCLAIN, AND MATTHEW MCLAIN, AS BENEFICIARIES OF THE ESTATE OF BERNARD MCLAIN, AND MARY MCLAIN, INDIVIDUALLY AS BENEFICIARY OF THE ESTATE OF BERNARD MCLAIN AND AS TRUSTEE OF THE E-3 RANCH TRUST, | CV 16-36-BLG-SPW-TJC |
| Plaintiffs, | **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| vs. | |
| FRANCIS MCLAIN, INDIVIDUALLY AND AS CO-MANAGER OF TERA BANI RETREAT MINISTRIES, CAROLINE MCLAIN, INDIVIDUALLY AND AS MANAGING DIRECTOR OF TERA BANI RETREAT MINISTRIES, ALAKHI JOY MCLAIN, SOHNJA MAY MCLAIN, AND DANE SEHAJ MCLAIN, AS PURPORTED CERTIFICATE HOLDERS OF THE E-3 RANCH TRUST, | |
| Defendants. | |
| THE UNITED STATES OF AMERICA, | |
| Intervenor Defendant and Counter/Cross-Claimant, | |

1

vs.

FAITH MCLAIN, CHRISTEEN
MCLAIN, JOHN MCLAIN, MOLLY
MCLAIN, MIRA MCLAIN, AND
MATTHEW MCLAIN, as
Beneficiaries of THE ESTATE OF
BERNARD MCLAIN; and MARY
MCLAIN, as Beneficiary of the
ESTATE OF BERNARD MCLAIN,
and as Trustee of the E-3 RANCH
TRUST,

                Counterclaim
                Defendants and

FRANCIS MCLAIN, individually, and
as Co-Manager of TERA BANI
RETREAT MINISTRIES; CAROLINE
MCLAIN, individually, and as
Managing Director of TERA BANI
RETREAT MINISTRIES; and
ALAKHI JOY MCLAIN, SOHNJA
MAY MCLAIN, AND DANE SEHAJ
MCLAIN, as Beneficiaries of the E-3
RANCH TRUST,

                Crossclaim
                Defendants and

AMERICAN BANK OF MONTANA
and BRAD D. HALL

                Additional
                Defendants on
                United States'
                claims.

2

This action for declaratory judgment principally concerns the ownership of a ranch located in the Paradise Valley known as the E-3 Ranch.  (Doc. 1.)  Judge Watters has referred the case to the undersigned under 28 U.S.C. § 636(b)(1)(B). (Doc. 80.)  Presently before the Court is the McLain Defendants' Motion for Summary Judgment Re: Disposition of E-3 Ranch Property After Invalidation of E-3 Ranch Trust.  (Doc. 172)  The motion is fully briefed and ripe for the Court's review.  (Docs. 173, 192, 207.)

Having considered the parties' submissions, the Court **RECOMMENDS** the motion be **DENIED**, as set forth below.

## I.    BACKGROUND

### A.    Factual Background[1]

Bernard McLain ("Bernard") and Kathryn McLain ("Kathryn") had six children.  After Kathryn and Bernard passed away, their children and grandchildren fell into a dispute concerning ownership of the E-3 Ranch, which was purportedly owned by different members of the family at various times. Plaintiffs are Faith McLain ("Faith"), Christeen McLain ("Christeen"), John McLain ("John"), Mary McLain ("Mary"), Molly McLain ("Molly"), Mira McLain

---

[1] The Court has previously described the factual background and the relationship of the parties in this case at length.  (*See* Docs. 67, 78, 122.)  The Court presumes familiarity with the basic factual background.  The background facts set forth here are relevant to the Court's determination of the pending motion for summary judgment.

("Mira"), and Matthew McLain ("Matthew") (collectively, the "McLain Plaintiffs").  Faith, Christeen, John, and Mary are siblings and the children of Bernard and Kathryn.  Molly, Mira, and Matthew are the children of James McLain, also known as Harley McLain ("Harley"), who was also one of Bernard and Kathryn's children, and is now deceased.

Defendants are Francis McLain, also known as Frank McLain ("Frank"), Caroline McLain ("Caroline"), Alakhi Joy McLain ("Alakhi"), Sohnja May McLain ("Sohnja"), and Dane Sehaj McLain ("Dane") (collectively the "McLain Defendants").  Frank is one of Bernard and Kathryn's children.  Caroline is Frank's wife, and Alakhi, Sohnja, and Dane are Frank and Caroline's children.

On June 21, 1996, Frank and an individual named Brad. D. Hall ("Hall") purchased the real property at issue in this case (referred to as the "E-3 Ranch" or "Property") from the Dorothy H. Malcolm Revocable Living Successor Trust.

In order to purchase the property, Frank and Hall obtained a loan for $1,000,000 from American Bank, secured by a mortgage on the property.

On November 30, 1996, Bernard and Kathryn loaned Frank and Caroline $290,000.  Frank and Caroline executed a mortgage (the "McLain Mortgage") in favor of Bernard and Kathryn, and the E-3 Ranch was identified as collateral.

On February 16, 1998, an "Irrevocable Pure Trust Organization," referred to as the E-3 Ranch Trust, was created at the request of Frank (the "E-3 Ranch Trust"

4

or "Trust").  Richard Humpal, Mary, and Harley were named as trustees of the E-3 Ranch Trust.  Richard Humpal and Harley are now deceased.

On December 15, 1999, Frank and Caroline executed a Quit Claim Deed transferring title to the E-3 Ranch to Bernard and Kathryn, in lieu of foreclosure on the $290,000.00 McLain Mortgage.

On August 17, 2000, Bernard executed an addendum to his Last Will and Testament, providing that the E-3 Ranch should be devised as follows: "25% to be divided equally amongst my six children: Christeen A. McLain, Francis L. McLain, Harley J. McLain, Faith McLain Kirchdorfer, Mary McLain Bram and John Bernard (J.B.) McLain and 25% to Alakhi J. McLain, 25% to Dane W. McLain, 25% to Sohnja M. McLain."  Previously, Bernard's Last Will and Testament provided all of his property, real, personal and mixed, should be devised to his children, Christeen, Frank, James, Mary, Faith, and John "equally, share and share alike."

On July 16, 2002, after Kathryn passed away, a Deed of Conveyance was executed by Bernard, as the personal representative of Kathryn's estate, which transferred Kathryn's interest in the E-3 Ranch to Bernard.

On July 22, 2002, a Quit Claim Deed was executed transferring Bernard's interest in the Property to the E-3 Ranch Trust.

/ / /

5

**B.     Procedural Background**

The McLain Plaintiffs originally brought this action in Montana state court on July 8, 2014.  (Doc. 1.)  In their Amended Complaint filed on August 15, 2014, the McLain Plaintiffs seek a declaration that: (1) the E-3 Ranch Trust, into which the Property was purportedly placed is invalid; (2) that the attempted transfer of the Property to the E-3 Ranch Trust is invalid; and (3) the Property, with certain exceptions, is an asset of Bernard's Estate.

The McLain Defendants answered and asserted counterclaims including claims for: adverse possession (Counterclaim I); plea for equity (Counterclaim II); to quiet title on the 164.5 acres quit claimed by Brad D. Hall (Counterclaim III); and damages (Counterclaim IV.)  (Doc. 6.)

On March 11, 2016, the state court granted the United States' motion to intervene.  (Doc. 1-3.)  On April 8, 2016, the United States removed, invoking the Court's jurisdiction under 28 U.S.C. § 1441.  (Doc. 1.)

Thereafter, the McLain Plaintiffs and McLain Defendants filed cross-motions for summary judgment regarding adverse possession (Docs. 23, 30), and the McLain Plaintiffs filed a motion for summary judgment regarding the validity of the E-3 Ranch Trust.[2]  (Doc. 36.)

---

[2] The McLain Defendants also moved to dismiss the United States' Intervenor Complaint, which was denied.  (Doc. 75.)

On February 23, 2017, Judge Watters adopted the Findings and Recommendations of Magistrate Judge Ostby, and denied the parties' cross-motions for summary judgment regarding adverse possession. (Doc. 75.) The Court held that regardless of whether the E-3 Ranch is determined to be owned by Bernard's estate or the E-3 Ranch Trust, disputed issues of fact precluded summary judgment on the McLain Defendants' adverse possession claim.

On March 14, 2017, Judge Watters granted the McLain Plaintiff's motion for summary judgment regarding the validity of the E-3 Trust. (Doc. 78.) Judge Watters found the E-3 Ranch Trust was invalid as a matter of law, and the transfer of the E-3 Ranch Property into the E-3 Ranch Trust was void. (*Id*. at 18.)

The parties then filed cross-motions motion for partial summary judgment, regarding the McLain Defendants' Counterclaim III, to quiet title to a one-half interest in the E-3 Ranch Property. (Docs. 82, 96.)

In resolving the cross-motions for partial summary judgment on Counterclaim III, this Court issued a Findings and Recommendations noting that because the E-3 Ranch Trust had been declared invalid, the E-3 Ranch remained vested in Bernard. (Doc. 122 at 23.) The Court therefore concluded that upon Bernard's death, the Property was vested in the devisees who were named in his last will. (*Id.* at 23-24.) Judge Watters agreed that "Bernard's interest in the E-3 Ranch, whatever it may have been, vested immediately in his devisees upon his

7

death." (Doc. 132 at 7.)  She found, however, that "equitable principles may establish Bernard had no interest in the E-3 Ranch upon his death, in which case the McClain Plaintiffs may not have any possessory interest in the E-3 Ranch." (*Id.* at 7-8.)  Therefore, Judge Watters indicated the parties would be allowed the opportunity to file motions on the issue of "whether equitable principles may establish Bernard had no interest in the E-3 Ranch upon his death." (*Id.* at 8.)

The McLain Defendants now move for summary judgment on the issue left open by Judge Watters' order.  (Doc. 172.)  The McLain Defendants present several legal theories to support their contention that based on principles of equity, the E-3 Ranch lawfully belongs to Frank and Caroline McLain.  The McLain Plaintiffs counter that disputed issues of material fact preclude summary judgment.

## II.    LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party.  *Id*.  "Disputes over irrelevant

or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by

9

demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  *See Matsushita*, 475 U.S. at 587.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment."  *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

### A.   Whether a Constructive Trust Should be Imposed

The McLain Defendants argue that even if the E-3 Ranch remained vested in Bernard at his death, a constructive trust should be imposed on his interest to prevent the unjust enrichment of his Estate.  The McLain Defendants assert the Court should declare the Estate is holding the E-3 Ranch in trust for the benefit of Frank and Caroline McLain.  The McLain Defendants assert this result is just because Frank and his family have invested extensive capital in the E-3 Ranch, including paying "every single mortgage payment"; have made substantial

improvements to the Property; and have paid all expenses relating to the Property, including all property taxes, insurance premiums, and power bills.

As an initial matter, the McLain Plaintiffs argue the McLain Defendants' motion should be denied without considering their substantive arguments because they did not plead a claim for a constructive or resulting trust.  As the McLain Defendants point out, however, none of the cases cited by the McLain Plaintiffs state an affirmative pleading requirement.  Moreover, the Montana Supreme Court has stated a constructive trust is an equitable remedy rather than a cause of action. *See Assoc. Mgmt. Servs., Inc. v. Ruff*, 424 P.3d 571, 594 n.21 (Mont. 2018) ("[R]ather than a predicate claim for relief, a constructive trust is generally an equitable remedy available upon proof of an unjust enrichment claim.").  *See also N. Cheyenne Tribe v. Roman Catholic Church*, 296 P.3d 450, 457 (Mont. 2013) ("[T]he imposition of a constructive trust serves as a possible remedy to rectify the unjust enrichment of a party.").  Nevertheless, the Court finds the McLain Defendants are not entitled to summary judgment on their request for a constructive trust, as set forth below.

Under Montana law, "[a] constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if the holder were permitted to retain it."  Mont. Code Ann. § 72-38-123.  A party seeking to impose

a constructive trust on property must "prove that the title holder would be unjustly enriched if they were permitted to retain title." *In re Marriage of Moss*, 977 P.2d 332, 327 (Mont. 1999). Thus, the aggrieved party "must first establish a claim of unjust enrichment in order for the court to consider the imposition of a constructive trust as a possible remedy for the unjust enrichment." *N. Cheyenne Tribe*, 196 P.3d at 457.

To prove unjust enrichment in the context of a constructive trust, the McLain Defendants must show:

> (1) a benefit conferred upon a defendant by another; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under such circumstances that would make it inequitable for the defendant to retain the benefit without payment of its value.

*Volk v. Goeser*, 367 P.3d 378, 389 (Mont. 2016). Generally, a claim for unjust enrichment of this type "should be limited to situations in which no other remedy exists." *N. Cheyenne Tribe*, 296 P.3d at 457.

The Court finds the undisputed facts demonstrate the first two elements would be met if the E-3 Ranch is determined to be an asset of Bernard's Estate. First, if Bernard held an interest in the E-3 Ranch upon his death, a benefit (the Property) would be conferred upon the devisees of his Estate. Second, the McLain Plaintiffs have knowledge that they stand to benefit if the E-3 Ranch is an asset of Bernard's Estate, as their participation in this litigations demonstrates.

12

But the third element – whether it would be inequitable for Bernard's Estate to retain the Property – clearly raises questions of disputed facts.  For example, the McLain Defendants acknowledge that in 1999, Frank and Caroline quitclaimed their interest in the E-3 Ranch to Bernard and Kathryn in lieu of foreclosure on a $290,000 McLain Mortgage.  Frank claims the loan was fully paid off in 2002, which is why Bernard conveyed his interest in the Property into the E-3 Ranch Trust.  The McLain Plaintiffs point out, however, that the McLain Defendants have not produced any documents evidencing the loan was repaid.  Further, the McLain Plaintiffs aver that they understood the loan was not repaid.  The McLain Plaintiffs have further testified they believed Frank took advantage of Bernard, particularly in his later years when he was susceptible to undue influence.

In addition, there are disputed issues of fact regarding the value of Frank and Caroline's contributions towards the Property.  The McLain Defendants argue they have contributed $3,691,606.48 into the Property.  They assert Frank made a $500,000 down payment when the Property was purchased, paid the origination fee and appraisal in the amount of $53,087, and paid $174,147 in interest on loans that were used to fund the down payment.  Frank and Caroline claim that since July 1996, they personally have paid a total of $1,918,869.90 on the mortgage, $41,370.55 in property taxes, $28,587.10 in insurance premiums, $38,831.93 for surveys of the Property, and over $100,000 in legal fees.  In addition, Frank and

Caroline claim they paid $280,400 for improvements to the Property through 2014, and $30,700 since January 2015.  They claim to have paid for repairs in excess of $50,000 and paid $92,000 in labor costs to maintain the ranch.  Frank and Caroline state that they have also put $436,700 in "sweat equity" into the Property.  The Court notes, however, that the McLain Defendants have provided little documentation to support the claimed amounts.

The McLain Plaintiffs dispute the amount Frank and Caroline contributed to the Property.  They argue that the actual amount Frank and Caroline have paid since the transfer of the Property to Bernard and Kathryn, and for which there is documentary proof, totals $1,076.306.23.  The McLain Plaintiffs argue any amounts paid before the Property was quitclaimed to Bernard and Kathryn should not count toward an equitable claim against Bernard's Estate.  The McLain Plaintiffs further dispute Frank and Caroline's claim that they personally made all mortgage payments, pointing out that Harley McLain made the mortgage payments in March 2008 and April 2009.  In addition, the McLain Plaintiffs dispute several categories of expenditures as irrelevant and unsupported, such as amounts paid for surveys and personal legal fees.  They also submitted an expert report indicating the improvements claimed by the McLain Defendants did not improve the value of the Property, but rather, the buildings are suffering from advanced physical deterioration and lack of functionality.

14

The McLain Plaintiffs have also raised a disputed issue of fact regarding the offset that should be applied to account for the benefit Frank and Caroline have derived from having use of, including collecting rent from, the Property.  On the basis of the McLain Plaintiffs' expert reports, they contend the proper valuation of Frank and Caroline's contributions to the E-3 Ranch, after offset is $346,460.53 – far below the nearly $3.7 million claimed by the McLain Defendants.

In short, the determination of whether Bernard's Estate would be unjustly enriched is a fact-laden inquiry.  At a minimum, disputed issues of fact regarding the repayment of the $290,000 loan, and the value of Frank and Caroline's contributions toward the E-3 Ranch, preclude a finding on summary judgment that a constructive trust should be imposed.[3]

/ / /

/ / /

/ / /

/ / /

---

[3] Further, it appears another equitable remedy may be available.  *N. Cheyenne Tribe*, 296 P.3d at 457 (noting a constructive trust "should be limited to situations in which no other remedy exists").  The McLain Defendants have filed a counterclaim for a "plea for equity" requesting that an equitable lien be placed on the Property to reimburse Frank and Caroline for the amounts they have paid toward the Property.  (Doc. 6 at 26-30.)  Thus, to the extent it is determined that the Estate will unfairly benefit from Frank and Caroline's contributions to the Property, an equitable lien could be placed on the property, rather than placing the E-3 Ranch into a constructive trust for the benefit of Frank and Caroline.

### B.     Whether Reformation of the E-3 Ranch Trust is Appropriate

The McLain Defendants next argue the E-3 Ranch Trust should be reformed to effectuate Bernard's intent in conveying his interest in the Property into the Trust.

Montana Code Ann. § 72-38-415 provides:

> The court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence what the settlor's intention was and that the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.

The McLain Defendants argue the "settlor" of the E-3 Ranch Trust was Frank, and therefore, the Court should look to his intention in forming the Trust.  They assert Frank drew up the Trust with the intent that it would hold the E-3 Ranch for the benefit of his children and his spiritual ministry. Under Montana law, however, the term "settlor" is defined as:

> [A] person, including a testator, who creates *or contributes property to* a trust.  If more than one person creates or contributes property to a trust, each person is a settlor of the portion of the trust property attributable to that person's contribution except to the extent another person has the power to revoke or withdraw that portion.

Mont. Code Ann. § 72-38-103(18) (emphasis added).  Accordingly, Bernard is the settlor with respect to his contribution of the E-3 Ranch to the Trust, and the Court must look to Bernard's intent to determine if reformation is appropriate.

16

Here, there are plainly disputed issues of fact that prevent the Court from finding by clear and convincing evidence what Bernard's intent was. For example, the McLain Defendants assert Bernard intended the E-3 Ranch to be held in the Trust for the benefit of Frank's children.  Whereas, the McLain Plaintiffs contend it was understood the E-3 Ranch Trust was for the benefit of Bernard's heirs, and the Property was to be equally distributed to his six children at the time of his death to "share and share alike."  The McLain Plaintiffs further assert Bernard was misled into transferring the E-3 Ranch into the Trust.  The McLain Plaintiffs contend Bernard was susceptible to undue influence at the time due to his advanced age, dementia, and loss of his wife.

In addition, the McLain Defendants assert that when Frank and Caroline quitclaimed the E-3 Ranch to Bernard and Kathryn, it was agreed Bernard and Kathryn would hold title to the Property in name only until the McLain Mortgage was repaid.  The McLain Defendants contend that Bernard's transfer of the Property into the Trust reflected the completion of their agreement.  The McLain Defendants assert Bernard and Kathryn never intended to possess or control the property, but rather, Frank and Caroline possessed, controlled and exercised sole dominion over it.  However, as noted above, there are disputed issues of fact regarding whether the McLain

17

Mortgage was repaid.  Further, as the Court previously found with respect to the counterclaim for adverse possession, "numerous pieces of evidence, including the McLain Defendants' own affidavits, create disputed issues of fact regarding whether the McLain Defendants' possession of the E-3 Ranch was permissive."  (Doc. 75 at 7.)

Again, Bernard's intent in creating the trust is a factual determination. Accordingly, the Court finds these factual issues preclude a finding on summary judgment that there is clear and convincing evidence the E-3 Ranch Trust should be reformed.

## C.    Whether a Resulting Trust Should be Imposed

Alternatively, the McLain Defendants argue a purchase-money resulting trust should be imposed.  The McLain Defendants contend Frank is the person who paid the purchase price for the E-3 Ranch, not Bernard, and therefore a resulting trust has arisen in Frank's favor as a matter of law.

"A resulting trust, also known as a purchase-money trust, arises only in certain narrowly defined circumstances, which have been codified by statute[.]" *Gitto v. Gitto*, 778 P.2d 906, 909 (Mont. 1989).  Montana Code Ann. § 72-38-122 provides that "[w]hen a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person who paid the purchase price."  Mont. Code Ann. § 72-38-122(1).  The Montana Supreme Court

18

has explained that a "resulting trust exists only when one party provides the consideration for the *transfer* of property." *Gitto*, 778 P.2d at 909.  The Court cited the following example of when a resulting trust would arise:  "[i]f A gives money to B for the purchase of real estate and B puts the title to the land in his name, presumably the parties intend that B will merely hold the title in trust for A, and A will retain the beneficial use of the property." *Id.*

The circumstances of this case do not appear to fit into the narrow criteria for a resulting trust.  Frank has not shown that he gave Bernard money specifically to purchase the E-3 Ranch as required by § 72-24-104 and *Gitto*.  Rather, the facts indicate Frank and Caroline borrowed $290,000 from Bernard and Kathryn, and they later quitclaimed the E-3 Ranch to Bernard and Kathryn in lieu of foreclosure on the loan.

As such, the Court finds the McLain Defendants are not entitled to summary judgment on their request that a resulting trust be imposed in favor of Frank.

D.     **Whether the Transfer of the E-3 Ranch is Void**

Finally, the McLain Defendants ask the Court to deem the conveyance of the Property into the E-3 Ranch Trust "voidable" instead of "void."  Essentially, the McLain Defendants are requesting the Court to revisit its earlier ruling finding "the E-3 Ranch Trust is invalid as a matter of law, and the transfer of the E-3 Ranch Property into the E-3 Ranch Trust void."  (Doc. 78 at 18.)

19

"Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'"  *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible,* 983 F.2d 152, 154 (9th Cir.)).  A court may depart from the law of the case only if: "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result."  *Id.*  "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id.*

The Court finds the McLain Defendants have not shown any of these conditions are present here.  Accordingly, the Court declines to revisit Judge Watters' prior ruling that the transfer of the E-Ranch into the invalid E-3 Ranch Trust was void.

## IV.    CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that:

1.    The McLain Defendants' Motion for Summary Judgment Re: Disposition of E-3 Ranch Property After Invalidation of E-3 Ranch Trust (Doc. 172) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 3rd day of August, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge