

NOV 0 9 2020

Clerk, U S District Court
District Of Montana
Billings

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BILLINGS DIVISION

CV 16-36-BLG-SPW

FAITH MCLAIN, et al.,

ORDER RE MAGISTRATE'S
FINDINGS AND
RECOMMENDATIONS

Plaintiffs,

vs.

FRANCIS MCLAIN, et al.,

Defendants.

THE UNITED STATES OF
AMERICA,

Intervenor
Defendant and
Counter/
Cross-Claimant.

vs.

FAITH MCLAIN, et al.,

Counterclaim
Defendants and

FRANCIS MCLAIN, et al.,

Crossclaim
Defendants and

AMERICAN BANK OF MONTANA,
et al.,

          Additional
          Defendants on
          United States'
          claims.

        This matter comes before the Court on Magistrate Judge Cavan's Findings

and Recommendations submitted August 3, 2020. (Doc. 208). Magistrate Cavan

recommended that the United States' Motion for Partial Summary Judgment be

granted, and that Defendant Francis McLain's ("Frank") Motion for Partial

Summary Judgment be denied. (Doc. 208 at 3). Defendants Caroline McLain,

Alakhi McLain, Sohnja McLain, and Dane McLain ("McLain Defendants") filed

objections to the Magistrate's recommendations on August 21, 2020. (Doc. 214).

Defendant Frank McLain filed an objection in two parts on August 21, 2020 and

August 23, 2020. (Doc. 216 and 217)[1]. The United States filed a reply to the

---

[1] As an initial matter, the Court must address the timing of the objections filed by Frank and the McLain Defendants. The Magistrate filed his findings and recommendations on August 3, 2020 and notified the parties that objections must be filed within 14 days of that date—August 17, 2020. Frank, acting solely on his own behalf, filed a motion for extension of time to file objections (Doc. 210) on August 13, 2020. The Court granted that motion and extended Frank's deadline to file objections to August 21, 2020 (Doc. 211). Both Frank and the McLain Defendants proceeded to file objections on August 21, 2020 (Doc. 214 and 216). This filing would make the McLain Defendants' objection untimely. However, due to the nature of representation for Frank and the McLain Defendants, the Court assumes that the McLain Defendants mistakenly believed the extension applied to their filing date as well and the Court will consider the merits of objections despite the timing issue. Frank's objections were filed in two parts with the first part filed on August 21, 2020 (Doc. 216) and the second part on August 23, 2020 (Doc. 215). The Court's order unquestionably set the time to file by August 21, 2020 making the second part of Frank's objection untimely. Frank noted that a computer glitch prevented him from filing both objections on August 21, 2020, yet he

various objections on September 4, 2020. (Doc. 218). For the following reasons, the Court will adopt the Magistrate's findings and recommendations in full.

## I.      RELEVANT BACKGROUND

The facts of this case are now well-known to the Court and only those events relevant to the Court's decision need be repeated here.

What began as a property ownership dispute between family members has since grown more complicated with the introduction of the United States seeking to foreclose federal tax liens filed against Defendant Frank McLain's interest in the E-3 Ranch property.

The Magistrate's findings and recommendations here (Doc. 208) pertain primarily to the issue of the 2014 United States' federally assessed tax lien. The issues began in 2008 when Frank was convicted for nine counts of Failure to Account for and Pay Over Employment Taxes in *United States v. Francis L. McLain*, 08-CR-10-PJS-FLN, U.S. Dist. Court, District of Minnesota. (Docs. 121 at 4; 131 at 3)[2]. Frank was sentenced to prison and ordered to pay a fine of $75,000 and a special assessment of $900. Frank appealed the conviction, but the Eighth

---

failed to move for an additional extension or seek alternative remedies. Therefore, the second part of Frank's objection is barred as untimely filed.

[2] As noted by Magistrate Cavan, the Court may take judicial notice of the judicial records of another court under Federal Rule of Evidence 201. The Court takes judicial notice of Frank's criminal convictions and appeals as reflected in the judicial records of the District of Minnesota, the Eighth Circuit Court of Appeals, and the District of Montana.

Circuit Court of Appeals affirmed the verdict. *See United States v. McLain*, 646 F.3d 599 (8th Cir. 2011) and *United States v. McLain*, 709 F.3d 1198 (8th Cir. 2013). Frank's request for post-conviction relief was also denied. *See United States v. McLain*, 2013 WL 5566503 (D. Minn. Oct. 8, 2013). The United States Attorney's Office for the District of Minnesota filed a Notice of Lien for Fine and/or Restitution with the Montana Clerk and Recorder's office in Park County on October 5, 2009 for $75,900.

Several months later, in January 2010, the District of Montana convicted Frank of Damage to Government Property in *United States v. McLain*, 08-CR-138-BLG-RFC, U.S. Dist. Court, District of Montana. The conviction resulted in a restitution sentence of $25,000 and a special assessment of $25. Frank did not appeal this sentence and his request for post-conviction relief was denied. (Doc. 63, 69). The United States Attorney's Office for the District of Montana filed a Notice of Lien for Fine and/or Restitution with the Montana Clerk and Recorder's Office in Park County for $25,025 on January 24, 2010. (Doc. 171-4).

On May 5, 2014, the IRS assessed civil penalties against Frank under 26 U.S.C. § 6672 for willful failure to collect, truthfully account for, and pay over the employment taxes of Kirpal Nurses, the same business and activities at issue in his Minnesota criminal conviction. The United States submitted Forms 4340 for each

4

assessment made against Frank. The IRS also filed a Notice of Federal Tax Lien

for those assessments on September 2, 2014. The lien amount asserted was for

$469,156.24. Frank has not fully paid the amounts due on this federal tax lien or

the liens for fines and/or restitution. The United States is now seeking to foreclose

on this tax lien assessed at $469,156.24.

The United States intervened in the underlying property dispute case in order

to foreclose on the federal tax liens attached to the subject property, the E-3 Ranch.

To that effect, the United States filed a motion for partial summary judgment

asking the Court to (1) determine, adjudge, and decree that the United States has

valid and perfected federal tax liens against all property and rights to property of

Frank; and (2) to the extent Frank is found at trial to have an ownership interest in

the E-3 Ranch: (a) the United States' federal tax liens attach to the real property;

(b) the tax liens shall be foreclosed upon the real property; (c) the real property be

sold; and (d) at a later date, the proceeds of the sale be distributed to the United

States in satisfaction of the federal tax liens, and all other creditors (including the

United States' lines for the fines and/or restitution) after the Court determines the

interests of the parties in the real property and their respective priority to a

distribution of the proceeds from the sale.

Frank moves for summary judgment seeking an invalidation of the federal

tax liens assessed against him and the October 5, 2009 lien for fine and/or

restitution stemming from his criminal conviction in the District of Minnesota.

## II.   LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates the

absence of a genuine issue of material fact and entitlement to judgment as a matter

of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). Material facts are those which may affect the outcome of the case.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a

material fact is genuine if there is a sufficient evidence for a reasonable factfinder

to return a verdict for the nonmoving party. *Id.* "Disputes over irrelevant or

unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec.

Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment always bears the initial burden of

establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at

323. The moving party can satisfy this burden in two ways: (1) by presenting

evidence that negates an essential element of the nonmoving party's case; or (2) by

demonstrating that the nonmoving party failed to make a showing sufficient to

establish an element essential to that party's case on which that party will bear the

burden of proof at trial. *Id.* at 322-23. If the moving party fails to discharge this

initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of

7

evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge, [when] he [or she] is ruling on a motion for

summary judgment." *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

### a.   Whether the Intervenor Complaint states a claim under 28 U.S.C. § 2410.

The United States moved for partial summary judgment on the question of

whether the federal tax liens at issue are brought pursuant to 28 U.S.C. § 2410

arguing that the Intervenor Complaint properly referenced this statute as the source

of the Government's intervention. Frank and the McLain Defendants argued that

because § 2410 is not directly cited in the Intervenor Complaint, the standards of

26 U.S.C. § 7403 should apply. The distinction is important as a party cannot

challenge the merits of the underlying tax assessments under § 2410, but the party

can make a challenge under a § 7403 action. *See Hughes v. United States*, 953 F.2d

531, 537-38 (9th Cir. 1992) ("A taxpayer may not use a section 2410 action to

collaterally attack the merits of an assessment."); *United States v. O'Connor*, 291

F.2d 520, 526 (2d Cir. 1961) (holding that a taxpayer may challenge the merits of

an assessment under § 7403).

Magistrate Cavan found that the United States did intervene in the case

under 28 U.S.C. § 2410. Although the Intervenor Complaint did not directly cite §

8

2410, the statute the Complaint did cite, 26 U.S.C. § 7424, references § 2410 and states that "[t]he provisions of section 2410 of title 28 of the United States Code . . . . shall apply in any case in which the United States intervenes . . . ." Therefore, the Magistrate determined that the Intervenor Complaint 'undoubtedly' asserted a claim under § 2410.

The Court agrees with Magistrate Cavan's findings. The United States' Intervenor Complaint states:

> This Intervenor Complaint is brought pursuant to 26 U.S.C. § 7424,
> which grants the United States the right to intervene in this action
> because the United States asserts a lien interest in the property that is
> the subject of this action.
>
> The United States' claims are brought pursuant to 26 U.S.C. §§ 7401
> at the direction of the Attorney General of the United States and with
> the authorization and request of the Chief Counsel of the Internal
> Revenue Service ("IRS"), a delegate of the Secretary of the Treasury
> of the United States.

(Doc. 20 at 3).

Frank and the McLain Defendants are correct that § 2410 is not directly referenced anywhere in the Intervenor Complaint. However, as noted by the Magistrate, §

9

7424 is directly referenced as the statute providing the Government with authority to intervene in the underlying case and assert its lien interests in the subject property. § 7424 states that "[t]he provisions of section 2410 of title 28 of the United States Code . . . shall apply in any case in which the United States intervenes as if the United States had originally been named a defendant in such action or suit." Thus, under the statutory terms expressed, § 2410 applies to the present intervention regardless of whether that section was specifically identified in the Intervenor Complaint or not.

The McLain Defendants place great weight on a statement the United States made in its reply brief supporting intervention that the United States sought intervention in order to foreclose its federal tax lien under 26 U.S.C. § 7403. (Doc. 3-8 at 46). The McLain Defendants argue this reference proves the United States intended to pursue the federal lien interest under more than one statute and opened the door for the Defendants to properly raise arguments about the merits of the tax assessment. As further proof, the McLain Defendants point out that the Intervenor Complaint lists § 7401 as a source of statutory authority as well as § 7424. However, neither of these arguments are persuasive.

The language of § 7424 is conclusive that when the United States intervenes to assert a lien under that title, the provisions of § 2410 "shall apply" in the same

manner as if the United States were an original party to the case. 26 U.S.C. § 7424.

Because the United States referenced § 7403 in a reply brief does not change the

controlling nature of the statutes actually listed in the Intervenor Complaint. The

McLain Defendants' argument that the Intervenor Complaint also references §

7401 does not diminish this conclusion. § 7401 merely provides notice that the

civil action is authorized by the Secretary of the U.S. Department of the Treasury

and the Attorney General. 26 U.S.C. § 7401. The statute says nothing about which

statutory scheme will control the civil action. Therefore, the Magistrate was correct

in his finding that § 2410 controls the United States' intervention in this matter.

Frank also argues that § 7403 should apply in this matter because it is a more

specific statute for actions that affect liens on property than § 2410. However, as

noted above, § 2410 clearly explains that it applies to intervention actions brought

pursuant to § 7424, which is the case here. Frank has cited no caselaw or statutory

language that bring into question the clear applicability of § 2410 in § 7424

intervention actions.

### b. Whether the McLain Defendants have Standing to Challenge the Merits of Frank's Tax Assessment.

Magistrate Cavan found that the McLain Defendants, as third parties, did not

have standing to challenge the tax assessment of Frank because third parties are

generally precluded from making such a challenge. *See Graham v. United States*,

11

243 F.2d 919, 922 (9th Cir. 1957). The McLain Defendants object that while this might be the general rule, the United States Supreme Court has recognized exceptions to that rule in *United States v. Williams*, 514 U.S. 527 (1995). The Magistrate did not believe any of the exceptions applied to the present case. The McLain Defendants assert that the transferee exception should apply because the Government's actions put the McLain Defendants at risk of substantial injury to their interests in the property and because "the United States claims . . . that the various conveyances of the property at issue here were fraudulent and should be set aside." (Doc. 214 at 13). The Government responds that no exception applies because the McLain Defendants have not paid Frank's outstanding tax assessment, they are not his fiduciary, and they have not personally been subject to a tax assessment under 26 U.S.C. § 6901.

The Magistrate is accurate in his review of *Williams'* holding and this Court agrees that the third-party exceptions described by the Supreme Court do not apply to the McLain Defendants. *Williams* concerned an ex-wife's refund suit against the IRS for a tax lien placed on property transferred to the ex-wife by the ex-husband. 514 U.S. at 530. Williams was unaware of the tax lien until after the transfer and paid the tax under duress in order to proceed with the sale of the property. *Id.* Of foremost concern to the Supreme Court was the issue of sovereign immunity and

12

the breadth of the immunity waiver found in 28 U.S.C. § 1346(a)(1). The *Williams*

Court stressed that "[i]n resolving this question, we may not enlarge the waiver

beyond the purview of the statutory language." *Id.* at 531 (citing *Department of*

*Energy v. Ohio*, 503 U.S. 607, 614-616 (1992)). Instead, the Court was constrained

by Congress's "unequivocally expressed" intent of the statute with all ambiguities

resolved in favor of immunity. *Id.* (quoting *United States v. Nordic Village, Inc.*,

503 U.S. 30, 33, (1992)). It was this careful review of the statutory language in §

1346(a)(1) that led the Supreme Court to determine that an individual "from whom

taxes are erroneously or illegally collected" may sue for a refund of those taxes

regardless of whether the tax was originally assessed against that individual. *Id.* at

536.

As part of its decision, the *Williams* Court also addressed concerns raised by

the Government that allowing a third-party refund suit would undermine the

general principle that third parties may not challenge the tax liabilities of others

and lead to wide-spread abuse. *Id.* at 538-39. The Court found this argument

untenable as limited exceptions to the general rule already existed including that

found in 26 U.S.C. § 6901(a)(1)(A). *Id.* at 539. Under that statute, the Court

explained that "certain transferees may litigate the tax liabilities of the transferor; if

the transfer qualifies as a fraudulent conveyance under state law . . ." *Id.* The

statute treated the transferee as the original taxpayer in that situation allowing the transferee to contest the liability in tax court or a § 1346(a)(1) refund suit. *Id.*

The McLain Defendants claim that the transferee exception in § 6901(a)(1)(A) should apply to the situation present here. However, the McLain Defendants have provided no argument for why the transferee exception applies other than a general assertion that the United States claims the underlying property conveyances were fraudulent. In order to qualify as the liable transferee under § 6901, the party must meet the definition of transferee under federal law and the transfer must be considered fraudulent under state law. *Slone v. Comm'r*, 810 F.3d 599, 604 (9th Cir. 2015). The McLain Defendants, however, have failed to demonstrate how the United States' Intervenor Complaint alleges an action under § 6901(a)(1)(A) to hold the McLain Defendants liable for Frank's tax assessment.

Noted above, the United States seeks summary judgment on the issue of the tax assessment against Frank and asserts its interest on that assessment pursuant to § 2410. There is no claim under § 6901 listed in the Intervenor Complaint against the McLain Defendants and the United States explains as much in its response brief to the McLain Defendants' objections. (Doc. 218 at 5). The Intervenor Complaint states that the United States is seeking to void the various transfers of the subject property, including the transfer to Caroline McLain, as fraudulent

14

transfers under Mont. Code Ann. § 31-2-333. Should the United States succeed in

this endeavor, the lien will attach to the subject-property ranch as ownership

reverts to Frank. The United States will then seek to foreclose on the property in

fulfillment of the outstanding tax liens. (Doc. 20 at 13-14). This is not the scenario

envisioned in *Williams* when the IRS seeks compensation from the transferee for

the debts of the transferor and the transferee steps into the shoes of the transferor to

challenge the merits. *Williams*, 514 U.S. at 539 ("the Code treats the transferee as

the taxpayer . . . so the transferee may contest the transferor's liability"). To hold

as such would strain the language of § 6901 past the "unequivocally expressed"

intent of Congress. Therefore, because no exception applies to the present claim,

the general principle applies that the McLain Defendants lack standing to challenge

the tax liabilities of Frank. *Williams*, 514 U.S. at 539.

### c. Whether the United States has a Valid Tax Lien against the Property of Frank McLain.

The Magistrate found that because the United States' intervention was

governed by 28 U.S.C. § 2410, the underlying tax assessment was beyond

meritorious challenge by Frank and represented a valid tax lien supported by

Certificates of Assessments, Payments and Other Specified Matters (Forms 4340).

The Magistrate further found that, even if the court were to consider Frank's

challenge to the merits of the tax lien, the matter would be barred under the law of

the case doctrine. Specifically, the Magistrate points to Frank's previous attempts to challenge the merits of the tax liens, often making similar if not identical arguments as those made against the present motion for summary judgment. Those attempts include Frank's previous challenge to the tax assessments through a refund counterclaim (Doc. 79) which was dismissed with prejudice because of Frank's failure to establish the necessary elements of a refund claim by this Court. (Docs. 121 and 131). Finally, the Magistrate found that while a taxpayer may challenge the procedural merits of a § 2410 action, Frank failed to raise such a procedural challenge.

Frank and the McLain Defendants object to these findings by arguing that the underlying jury verdicts assessing penalties against Frank for failing to pay employment taxes were flawed. Specifically, the parties assert that the jury instructions were not sufficient "as the number of employees and the dollar amount of the unpaid employment taxes were not part of the jury's veridict" (Doc. 214 at 11) and that the Sept. 14, 2014 lien was not based on valid TFRP assessments (Doc. 216 at 4). However, these arguments are barred by § 2410 as collateral attacks on the underlying tax assessments.

First, as determined above, the McLain defendants have no standing to challenge the merits of Frank's tax assessments.

16

Second, a quiet title action under § 2410 provides only a limited waiver of sovereign immunity. *Hughes v. United States*, 953 F.2d 531, 538 (1992). A taxpayer may challenge the procedural validity of the tax lien, but the waiver does not extend to attacking the merits of the lien itself. *United States v. Cabral*, 2008 U.S. Dist. LEXIS 73968, *14 (E.D. Cal. Aug. 13 2008); *Elias v. Connett*, 908 F.2d 521, 527-28 (9th Cir. 2001). Thus, "[t]he taxpayer cannot contest the existence or validity of the tax assessment in an action under § 2410." *Cabral*, 2008 U.S. Dist. LEXIS at *14-15. Here, Frank's only argument in Part I of his objections represents a direct challenge to the validity of the tax liens by arguing that the Sept. 14, 2014 lien is not based on a valid TFRP. This challenge is barred under a § 2410 action and this argument is dismissed as improper.

## IV.   CONCLUSION

The Court concurs with the Magistrate and finds that the United States has a valid tax lien, that arose at the time the assessments were made and continues until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time, against all property and rights of property belonging to Frank. 26 U.S.C. § 6322. To the extent Frank is determined to have an ownership interest in the E-3 Ranch through this litigation, the United States' liens attach to that interest, and the United States should be entitled to foreclose its federal tax

liens. Therefore,

**IT IS HEREBY ORDERED** that the Findings and Recommendations of

the United States Magistrate Judge (Doc. 208) are **ADOPTED IN FULL**.

**IT IS FURTHER ORDERED** that the United States' Motion for Partial

Summary Judgment (Doc. 169) is **GRANTED**. Defendant Frank McLain's Motion

for Partial Summary Judgment (Doc. 187) is **DENIED**.

DATED this _____9th_____ day of November, 2020.

Honorable Susan P. Watters,
United States District Judge