UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FAITH MCLAIN, et al., | CV 16-36-BLG-SPW |
| Plaintiffs, | ORDER RE MAGISTRATE'S FINDINGS AND RECOMMENDATIONS |
| vs. | |
| FRANCIS MCLAIN, et al., | |
| Defendants. | |
| THE UNITED STATES OF AMERICA, | |
| Intervenor Defendant and Counter/ Cross-Claimant. | |
| vs. | |
| FAITH MCLAIN, et al., | |
| Counterclaim Defendants and | |
| FRANCIS MCLAIN, et al., | |
| Crossclaim Defendants and | |

1

| | |
|---|---|
| AMERICAN BANK OF MONTANA, et al., | Additional Defendants on United States' claims. |

This matter comes before the Court on Magistrate Judge Cavan's Findings and Recommendations submitted August 3, 2020. (Doc. 209). Judge Cavan found that disputes of material fact existed as to all claims. As result, Judge Cavan recommended that the McLain Defendants'[1] Motion for Summary Judgment (Doc. 172) be denied. The McLain Defendants timely filed objections to these findings and recommendations on August 17, 2020. (Doc. 212). After careful review of those objections and for the following reasons, the Court adopts Judge Cavan's findings and recommendations in full.

## I. STANDARD OF REVIEW

The McLain Defendants filed timely objections to the findings and recommendations. (Doc. 124). The McLain Defendants are entitled to de novo review of those portions of Judge Cavan's findings and recommendations to which

---

[1] The parties relevant to this motion are Defendants Francis McLain ("Frank"), his wife Caroline McLain ("Caroline"), and their children Alakhi Joy McLain, Sohnja May McLain, and Dane Sehaj McLain ("McLain Defendants"). Additionally, Plaintiffs are Frank's siblings Faith McLain, Christeen McLain, John McLain, and Mary McLain ("McLain Plaintiffs").

2

they properly object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## II. RELEVANT BACKGROUND

### a. Factual Background

The facts of this case are now well-known to the Court and only those events relevant to the Court's decision need be repeated here from Judge Cavan's findings.[2]

On June 21, 1996, Frank and an individual named Brad. D. Hall ("Hall") purchased the real property at issue in this case (referred to as the "E-3 Ranch" or "Property") from the Dorothy H. Malcolm Revocable Living Successor Trust. In order to purchase the property, Frank and Hall obtained a loan for $1,000,000 from American Bank, secured by a mortgage on the property.

On November 30, 1996, Frank and Caroline executed a Mortgage and Security Agreement ("McLain Mortgage") with Frank's parents Bernard and Kathryn McLain. (Doc. 101-1). The mortgage agreement denotes that Bernard and Kathryn provided a mortgage loan to Frank and Caroline in the amount of $290,000 and "[a]s security for the repayment of the Loan evidenced by the Note

---

[2] The McLain Defendants object to the Magistrate's description of the factual background included in the Magistrate's findings and recommendations. The Defendants believe the description paints the events leading up to the motion for summary judgment with the narrative of a sibling feud over the family farm. This objection does not affect the outcome of this Court's determination, however, the objected to portions of the Magistrate's factual recitation shall be omitted from this order.

3

[Frank and Caroline McLain] is executing and delivering this Mortgage."[3] (Id. at 1). The McLain Mortgage transferred a security interest in the E-3 Ranch to Bernard and Kathryn as collateral. (Id. at 23).

On February 16, 1998, an "Irrevocable Pure Trust Organization," referred to as the E-3 Ranch Trust, was created at the request of Frank (the "E-3 Ranch Trust" or "Trust"). Richard Humpal, Mary, and Harley were named as trustees of the E-3 Ranch Trust. Richard Humpal and Harley are now deceased.

On December 15, 1999, Frank and Caroline executed a Quit Claim Deed transferring title to the E-3 Ranch to Bernard and Kathryn, in lieu of foreclosure on the $290,000 McLain Mortgage. (Doc. 38-10).

On August 17, 2000, Bernard executed an addendum to his Last Will and Testament, providing that the E-3 Ranch should be devised as follows: "25% to be divided equally amongst my six children: Christeen A. McLain, Francis L. McLain, Harley J. McLain, Faith McLain Kirchdorfer, Mary McLain Bram and John Bernard (J.B.) McLain and 25% to Alakhi J. McLain, 25% to Dane W.

---

[3] The McLain Defendants specifically objected to the Magistrate's description of this $290,000 loan. The Magistrate described the loan as one from Bernard and Kathryn to Frank and Caroline. The McLain Defendants assert that this is not accurate and that the loan was actually made to Frank's company, Lifelines Care. As far as the Court is aware, the parties have not provided the Note itself as an exhibit to further evidence who Bernard and Kathryn made the $290,000 loan to. The Mortgage Agreement submitted simply describes the loan as between Frank and Caroline as mortgagor and Bernard and Kathryn as mortgagee. Mindful of the McLain Defendant's objection, the Mortgage Agreement clearly transferred a security interest in the E-3 Ranch from Frank and Caroline to Bernard and Kathryn and held Frank and Caroline responsible for the repayment of the $290,000 loan amount to Bernard and Kathryn.

4

McLain, 25% to Sohnja M. McLain." (Doc. 5-3 at 27). Previously, Bernard's Last Will and Testament provided all of his property, real, personal and mixed, should be devised to his children, Christeen, Frank, James, Mary, Faith, and John "equally, share and share alike." (Doc. 5-3 at 25).

On July 16, 2002, after Kathryn passed away, a Deed of Conveyance was executed by Bernard, as the personal representative of Kathryn's estate, which transferred Kathryn's interest in the E-3 Ranch to Bernard.

On July 22, 2002, a Quit Claim Deed was executed transferring Bernard's interest in the Property to the E-3 Ranch Trust.

### b. Procedural Background

The McLain Defendants did not object to Judge Cavan's recitation of the procedural background of the case. The Court adopts Judge Cavan's procedural background in full, but, for the sake of brevity, shall not repeat that recitation here.

### III. Legal Standard

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute

as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## IV. DISCUSSION

In addition to the objections to Judge Cavan's factual recitation, the McLain Defendants make several objections to Judge Cavan's legal findings: (1) Judge Cavan erred in finding that material factual disputes precluded summary judgment on the issue of a constructive trust; (2) Judge Cavan erred in finding that reforming

the trust was not an available remedy; (3) Judge Cavan incorrectly found that a resulting trust was not appropriate under the circumstances; (4) Judge Cavan erred in failing to address the merits of the McLain Defendant's argument for finding the E-3 Ranch Trust voidable and not void; and (5) Judge Cavan erred in failing to address the McLain Defendant's request for a hearing their motion for summary judgment.

### a. Constructive Trust

A constructive trust is an equitable remedy a court may impose to rectify a party's unjust enrichment. *N. Cheyenne Tribe v. Roman Catholic Church*, 296 P.3d 450, 457 (Mont. 2013). A court has broad discretion to impose a constructive trust, but the aggrieved party must first establish a claim of unjust enrichment. *Id.* "The essential elements of an unjust enrichment claim are: (1) a benefit conferred on one party by another; (2) the other's appreciation or knowledge of the benefit; and (3) the other's acceptance or retention of the benefit under circumstances that would render it inequitable for the other to retain the benefit without compensating the first party for the value of the benefit." *Assoc. Mgmt. Servs. v. Ruff*, 424 P.3d 571, 595 (Mont. 2018).

Judge Cavan found that the first two elements of unjust enrichment were met but that disputes of material fact precluded a finding of summary judgment on the

8

third element. Specifically, the McLain Defendants assert that Frank and Caroline contributed $3,691,606.48 towards the property while the McLain Plaintiffs dispute this amount claiming that total contribution supported by documentary evidence was $1,076,306.23 with an offset of $761,417.27 from rent proceeds. The McLain Defendants also argued that Frank and Caroline had paid off the $290,000 loan in 2002 when Bernard conveyed his interest in the E-3 Ranch to the E-3 Ranch Trust. The McLain Plaintiffs dispute this assertion arguing there is no evidence that Frank paid off this loan and aver that Frank never paid off the loan.

The McLain Defendants admit documentary evidence is limited to support Frank and Caroline's contributions to the E-3 Ranch property. However, the McLain Defendants object that this lack of documentary evidence prevents a finding of summary judgment given the arguably unrebutted statements in Frank's affidavit. Frank's avers that the $290,000 loan was paid in 2002 as evidenced by Bernard's transfer of the E-3 Ranch to the E-3 Ranch Trust. Frank also avers that every mortgage payment for the E-3 Ranch has been made by either himself or Caroline. General statements questioning Frank's assertions and expert reports analyzing perceived rental values and property improvements are not enough, in the McLain Defendants' opinion, to overcome the affidavit evidence and create a genuine issue of material fact.

9

The Court sees nothing but genuine issues of material fact in this argument. However, even if that were not true, summary judgment on the issue of a constructive trust would still be inappropriate because other legal remedies might yet exist. The McLain Plaintiffs aver in their depositions that Frank did not pay off the $290,000 loan. The McLain Defendants aver that Frank did pay off the loan and Bernard transferred the E-3 Ranch to the Trust as a result. The McLain Plaintiffs aver that Frank took advantage of Bernard in his later years when he suffered from dementia and unduly influenced him. The McLain Defendants aver that Frank and Caroline contributed $3,691,606.48 to the E-3 Ranch and have made every mortgage payment on the property. The McLain Plaintiffs aver the documentary evidence shows the total contributions to be $1,076,306.23. The McLain Plaintiffs further argue that expert reports show the McLain Defendants returned a benefit of $761,417.27 from that contribution. Additionally, the McLain Plaintiffs argue Frank and Caroline did not make every mortgage payment as Harley McLain made mortgage payments on the property in March 2008 and April 2009. Judge Cavan found these disputes genuine when viewing the inferences in the light most favorable to the nonmoving party and the Court agrees. It is the place of the jury, not the Court, to decide these issues. *See Anderson*, 477 U.S. at 255.

Additionally, the presence of possible alternative remedies precludes the Court from finding a constructive trust. As an equitable remedy, a constructive trust is reserved for those situations where no other remedy exists. See *N. Cheyenne Tribe*, 296 P.3d at 457 (holding that equitable remedies for unjust enrichment, such as constructive trusts, should be limited to situations where no other remedy exists). Judge Cavan found, and this Court agrees, that alternative remedies are still pending in this case including the McLain Defendants' counterclaim requesting an equitable lien on the E-3 Ranch.

### b. Reformation of the Trust

The terms of a trust may be reformed if clear and convincing evidence demonstrates the trust does not align with the settlor's intent due to some mistake of fact or law. Mont. Code Ann. § 72-38-415. Under Mont. Code Ann. § 72-38-103(18), a settlor is:

> [A] person, including a testator, who creates or contributes property to a trust. If more than one person creates or contributes property to a trust, each person is a settlor of the portion of the trust property attributable to that person's contribution except to the extent another person has the power to revoke or withdraw that portion.

Judge Cavan found that issues of material fact precluded a finding by clear and convincing evidence of Bernard's intent when transferring the E-3 Ranch to the E-3 Ranch Trust. Those issues included disputes about the influence Frank held

11

over Bernard in his later years and Bernard's understanding of whether the E-3 Ranch would be shared by his children as evidenced in his earlier will or held primarily for Frank and his children as evidenced by the amended will.

The McLain Defendants objected to this determination arguing that Frank, as creator of the Trust, was the settlor and not Bernard. Therefore, Judge Cavan should have looked at the clear evidence of Frank's intent when creating the trust. However, Mont. Code Ann. § 72-38-103(18) states that more than one settlor may be present in a trust and, when that occurs, "each person is a settlor of the portion of the trust property attributable to that person's contribution . . ." Bernard held title to the E-3 Ranch and subsequently transferred that property into the E-3 Ranch Trust on July 22, 2002. Therefore, Bernard was the settlor regarding the E-3 Ranch property and Judge Cavan did not err in finding that Bernard's intent determined the issue of reformation. The Court agrees that disputes of material fact preclude a finding of summary judgment on trust reformation.

   c. **Resulting Trust**

"When a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person who paid the purchase price." Mont. Code Ann. § 72-38-122(1). The statute is narrowly interpreted as "[a] resulting trust exists only when one party provides the

consideration for the *transfer* of property." *Gitto v. Gitto*, 778 P.2d 906, 909 (Mont. 1989) (emphasis in original)[4]. A party moving to establish a resulting trust must provide evidence of the trust's existence that is "clear, convincing and practically free from doubt." *Hilliard v. Hilliard*, 844 P.2d 54, 57 (Mont. 1992).

Judge Cavan found that the circumstances of this case did not appear to fit the scenario envisioned by Mont. Code Ann. § 72-38-122. Referencing *Gitto*, Judge Cavan explained that the example provided by the Montana Supreme Court where A gives money to B to purchase real estate and B puts title to the real estate in his name was not what happened in this case. Frank did not give Bernard money to purchase the E-3 Ranch. Instead, Judge Cavan found the opposite might be true that Frank and Caroline borrowed $290,000 from Bernard and Kathryn and later quitclaimed the E-3 Ranch deed in lieu of foreclosure on that loan.

The McLain Defendants object to this finding, arguing that Judge Cavan erred in his application of Mont. Code Ann. § 72-38-122. Because the statute does not describe a time frame within which the property transfer must take place, the McLain Defendants assert that a resulting trust is applicable here because Frank, as purchaser of the property, later transferred the property to Bernard. The McLain Defendants believe that the Court should focus primarily on this subsequent

---

[4] The statute in *Gitto* has since been repealed and replaced by Mont. Code Ann. § 72-38-122. However, aside from updating some of the language, the statutes are identical.

transfer as the moment a resulting trust arose in favor of Frank. There is also a disagreement over how the $290,000 loan should apply to the property transfer. The McLain Defendants argue that the loan was not made directly to Frank and Caroline but to their business, Lifelines Care, Inc. The McLain Defendants point to Frank's affidavit as evidence of this argument where Frank avers that Bernard and Kathryn provided funds for his business but not the E-3 Ranch.

      The Court agrees with Judge Cavan that summary judgment on this issue is inappropriate if for no other reason than the evidence put forth in support of a resulting trust is not clear, convincing and practically free of doubt. Frank's affidavit states that Bernard and Kathryn did not contribute any funds towards the purchase or financing of the E-3 Ranch. The McLain Defendants argue in their objections that the facts "do not indicate that Frank and Caroline borrowed any money from Bernard and Kathryn." (Doc. 212 at 15). The McLain Plaintiffs dispute this statement and the Mortgage Agreement describes the $290,000 loan as between Bernard and Kathryn as mortgagees and Frank and Caroline as mortgagors. Lifelines Care, Inc. is not mentioned. (Doc. 101-1 at 1). Other than Frank's affidavit, the McLain Defendants cited to no other evidence or case law for their argument to impose a resulting trust. At the very least, the Court finds that the evidence presented so far falls short of being practically free of doubt and agrees

14

that summary judgment on a resulting trust in favor of the McLain Defendants is inappropriate.

### d. Void or Voidable

The McLain Defendants argue the Court should reconsider its previous ruling that the transfer of the E-3 Ranch property into the E-3 Ranch Trust was void. While the E-3 Ranch conveyance was deemed void because the E-3 Ranch Trust was invalid, the McLain Defendants point out that the conveyance of a parcel of land from the E-3 Trust to Daryl Williams has been ratified as valid by all parties involved including the McLain Plaintiffs and McLain Defendants. The McLain Defendants assert that because the parties agree the Williams transfer was valid even though the underlying Trust was invalidated, the parties implicitly agree that other transfers from the Trust, including the E-3 Ranch transfer, were not void but were voidable. Therefore, the McLain Defendants urge the Court to change its ruling that the E-3 Ranch transfer was void to a determination that the transfer was voidable. Judge Cavan did not reach the merits of this argument but found that the law of the case doctrine prevented the Court from revisiting its prior ruling and that the McLain Defendants failed to explain how any exception to the doctrine applied.

In their objections, the McLain Defendants once again fail to address the law

15

of the case doctrine or explain how any exception to that doctrine applies. Without an applicable exception, a court cannot revisit a prior ruling without abusing its discretion. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). Those exceptions include that: "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *Id*. The McLain Defendants do not argue that the Court's decision was clearly erroneous or that a change in the law has occurred. The Court has also not been made aware of any changed circumstances in the case. The Williams conveyance occurred long before the Court's ruling on the E-3 Ranch transfer and nothing prevented the McLain Defendants from previously presenting the argument to the Court. Finally, the McLain Defendants do not address how the ratification of Williams' conveyance has resulted in a manifest injustice and it is not the place of the Court to create an argument when one is not submitted. The law of the case doctrine clearly applies, and the Court agrees with Judge Cavan that the doctrine prevents the Court from revisiting its prior ruling.

### e. Request for a Hearing

The McLain Defendants request a hearing on their motion for summary judgment in order for the parties "to try and address the issues the Court finds

16

determinative." (Doc. 212 at 17). Judge Cavan did not address this request in his findings and recommendations. However, the Court finds that a hearing on the summary judgment motion is not warranted nor appropriate. The majority of the issues addressed by Judge Cavan and this Court in the McLain Defendants' motion involved disputed material facts. A hearing would not resolve these issues as only a jury is capable of resolving factual issues when considering a motion for summary judgment. *Anderson*, 477 U.S. at 255. Therefore, the Court denies the McLain Defendants' request for a summary judgment hearing.

### V. CONCLUSION

Based on the foregoing,

**IT IS HEREBY ORDERED** that the Findings and Recommendations of the United States Magistrate Judge (Doc. 209) are **ADOPTED IN FULL**.

**IT IS FURTHER ORDERED** that the McLain Defendants' Motion for Summary Judgment Re: Disposition of E-3 Ranch Property After Invalidation of E-3 Ranch Trust (Doc. 172) is **DENIED**.

DATED this 14th day of December, 2020.

Honorable Susan P. Watters,
United States District Judge